**Richard CHIRA, Appellant,**

v.

**LOCKHEED AIRCRAFT CORP.,**
**Appellee.**

**No. 97, Docket 80–7117.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 1980.

Decided Oct. 14, 1980.

Luigi P. De Maio, New York City, for appellant.

William F. Koegel, New York City (Rex W. Mixon, Jr., Rogers & Wells, New York City, of counsel), for appellee.

Before WATERMAN, KAUFMAN and MESKILL, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Courts of the Anglo–American legal tradition receive their mandate, in the most profound sense, from Magna Charta's twin covenants not to deny or delay—*negabimus aut differemus*—justice. To secure the first promise, courts administer a massive body of substantive principles. To fulfill the second, for centuries they have promulgated rules of procedure, designed to move cases to disposition quickly—and therefore justly.

Central to such codes of procedure has been the inherent power of a court to dismiss a case for the plaintiff's failure to prosecute. Initially, the authority was derived from common law principles.[1] Then it was carried forward in a statute passed by the first Congress [2] and in the Conformity Act of 1872,[3] and also in the clear terms of provisions such as old Equity Rule 57.[4] Federal courts from the start have been the steadfast protectors of a defendant's right to be free from idle procrastination on the part of the plaintiff.[5] The advent of the Federal Rules of Civil Procedure in 1938 [6] codified the tenet in Rule 41(b), which provides in part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him."

The remedy is pungent, rarely used, and conclusive.[7] A district judge should employ it only when he is sure of the impotence of lesser sanctions. Because the behavior of plaintiff and his attorney in this case was dilatory, obstreperous, and resolute, we find the ultimate sanction appropriate, and affirm the dismissal below of plaintiff's complaint.

I.

On July 18, 1978, Richard Chira, by his attorney, Martin Paul Solomon, sued Lockheed Aircraft Corp.[8] for various claims arising out of Lockheed's termination of Chira's employment in July 1977.[9] Chira, a lawyer, had worked in the general counsel's office of a Lockheed subsidiary in California since 1974, and Lockheed discharged him after Chira took an allegedly unauthorized leave

---

1. Courts at common law could dismiss a suit through the judgments of *nonsuit* and *non prosequitur*. *See* 3 Blackstone, *Commentaries* 295–96 (1768). Courts of equity enjoyed a similar power. *Id.* at 451.

2. Act of September 29, 1789, c. 21, § 2, 1 Stat. 93.

3. Act of June 1, 1872, c. 255, 17 Stat. 197, later *codified at* Rev.Stat. § 914.

4. *See Maison Dorin S.A. v. Arnold*, 16 F.2d 977, 978 (2d Cir.), *cert. denied*, 273 U.S. 766, 47 S.Ct. 571, 71 L.Ed.2d 881 (1927).

5. *See, e. g., United States v. Fischer*, 93 F.2d 488 (2d Cir. 1937) (Conformity Act); *Welch v. Ruggles–Coles Engineering Co.*, 19 F.2d 288 (2d Cir. 1927) (Equity Rule 57). *See generally Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

6. The Rules were promulgated by the Supreme Court in an Order of December 20, 1937, *see* 302 U.S. 783, and they became effective September 16, 1938. *See generally* Chandler, *Some Major Advances in the Federal Judicial System*, 1922–1947, 31 F.R.D. 307, 505–512 (1963).

7. The dismissal available at common law was without prejudice. *Haldeman v. United States*, 91 U.S. 584, 585, 23 L.Ed. 433 (1876). *See generally Madden v. Perry*, 264 F.2d 169, 175 (7th Cir.), *cert. denied*, 360 U.S. 931, 79 S.Ct. 1450, 3 L.Ed.2d 1544 (1959). Unless otherwise provided, a dismissal under Rule 41(b) operates as an adjudication on the merits.

8. Lockheed Aircraft Corp. has since changed its name to Lockheed Corporation.

9. Chira filed the suit in a New York state court. Lockheed removed it to federal court on August 17, 1978.

of absence. Chira sued for, *inter alia,* fraud, breach of contract, wrongful discharge, tortious interference with career opportunities, defamation of his professional reputation, harassment, intentional infliction of emotional distress, and job discrimination on the basis of age (Chira was 45), marital status (he is single), ethnic background (he is of Arab descent), and medical condition. Chira claimed damages of $96 million.

Lockheed moved quickly to transfer the suit to the Central District of California. Judge Knapp denied the motion with leave to make it again at a later date, and filed, on December 20, 1978, the following order: "We further direct that plaintiff's discovery be completed within six months, at which time plaintiff is directed to file a statement showing exactly what he proposes to prove, what witnesses he plans to call and giving a brief resume of the testimony expected from each witness."

After the order, Lockheed tried to depose Chira. Chira failed to appear for his first scheduled deposition, and filed a motion to disqualify Lockheed's counsel, Rogers & Wells. Judge Knapp found the motion frivolous and denied it. The deposition was eventually held on four days in early April 1979; Lockheed asked Chira questions concerning, *inter alia,* his medical complaints, his past employment record, and his current professional reputation. After consulting with Chira, Solomon directed Chira not to answer 120 of the questions, most frequently on the ground of relevance. Lockheed requested documents from Chira on the same topics; Chira produced some of them, and refused to produce others on the same ground asserted at the deposition. Lockheed objected strenuously, but did not secure an order from Judge Knapp directing Chira to answer or produce.

While Chira and Solomon were thus encumbering Lockheed's efforts to discern the basis of the complaint, the time was running on Judge Knapp's six–month deadline. By the end of the six–month period on June 20, 1979, Chira had not filed the required list of witnesses, nor had he completed his discovery. Our independent examination of the record, confirmed by Chira's counsel on appeal, reveals that during the six–month period, Chira and Solomon did absolutely nothing at all to move their case to trial.

Lockheed finally moved for an order compelling discovery after Chira's period for compliance had expired. It also renewed its motion to transfer, and moved in the alternative to dismiss the suit under Rule 41(b), for failure to prosecute or to comply with an order of the court. The district court granted the motion to dismiss. 85 F.R.D. 93 (S.D.N.Y.). Chira, represented by new counsel, appeals.

## II.

■ At the outset, we note that a dismissal under Rule 41(b) is reversible only if an abuse of discretion has been shown. *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir. 1972) (per curiam). Emphasis on the limited scope of review is unnecessary here, because the language of the Rule provides three separate bases for dismissal, and the facts of this case–egregious as they are–clearly justify the district court's action.

■ Chira does not contend that he complied with the terms of Judge Knapp's order. Instead he argues that, even assuming his tardiness, dismissal was too harsh a remedy. Had Chira complied in part, or been frustrated in good faith efforts to comply, the argument might be colorable, but given his complete intransigence in the face of a clear court order, we reject it. We have affirmed dismissals in circumstances much less extreme, *e. g., Ali v. A & G Co.,* 542 F.2d 595 (2d Cir. 1976); *Ohliger v. United States,* 308 F.2d 667 (2d Cir. 1962) (per curiam), and endorse those holdings here.

■ Conceding the total failure to comply, Chira offers as an excuse his "right to counsel," *i. e.,* his right to rely on Solomon. However, absent a truly extraordinary situation, *e. g., United States v. Cirami,* 563 F.2d 26, 35 (2d Cir. 1977), the client is not excused from the consequences of his attorney's nonfeasance. *Dominguez v. United*

*States,* 583 F.2d 615, 618 (2d Cir. 1978) (per curiam), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979); *Davis v. United Fruit Co.,* 402 F.2d 328, 331 (2d Cir. 1968), *cert. denied,* 393 U.S. 1085, 89 S.Ct. 869, 21 L.Ed.2d 777 (1969). In the seminal case of *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962), the Supreme Court clarified the client's responsibility for his counsel's conduct:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on his client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer–agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer,* 101 U.S. 320, 326 [, 25 L.Ed. 955] [(1880)].

Chira's effort to excuse himself from the consequences of Solomon's nonfeasance is especially weak, because Chira is an attorney. While he alleges he is "not experienced in litigation," he did cite his experience as a lawyer as a reason for Lockheed to hire him, and presumably depends on his legal expertise as the basis for the "professional reputation" he now sues to protect. The record implies as well that Solomon sought Chira's advice before advising him not to answer questions at the deposition. Moreover, Chira is a member of the New York bar and, his disclaimers notwithstanding, it appears that he has had earlier litigation experience.[10] He is clearly chargeable with his lawyer's neglect. *See Spering v. Texas Butadiene & Chemical Corp.,* 434 F.2d 677, 680 (3d Cir. 1970), *cert. denied,* 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 95 (1971).

Since Chira's culpability is tied to Solomon's, we examine Solomon's excuses for their common failure to comply with the district court's order. Solomon told Judge Knapp that an automobile accident on April 6, 1979, rendered him unable to practice law for two months. His and Chira's duty to secure replacement counsel under such dire circumstances aside, the excuse falters in the face of Solomon's undoubted energy at Chira's deposition on April 9 and 10. *Cf. Edmond v. Moore–McCormack Lines, Inc.,* 253 F.2d 143, 144 (2d Cir.) (per curiam), *cert. denied,* 358 U.S. 848, 79 S.Ct. 73, 3 L.Ed.2d 82 (1958). We are similarly not swayed by Solomon's statement that he was occupied by legal work for a deceased friend's estate, *cf. Bardin v. Mondon,* 298 F.2d 235 (2d Cir. 1961), and by his involvement in four of his own cases, *see Schwarz v. United States,* 384 F.2d 833, 835 (2d Cir. 1967). The proper course of action would have been to inform Judge Knapp or the four judges in the other cases of his scheduling conflicts; Solomon did neither. Finally, all his excuses notwithstanding, Solomon admits he "inadvertently forgot." His behavior is inexcusable. *Standard Newspapers, Inc. v. King,* 375 F.2d 115, 116 (2d Cir. 1967) (per curiam). *Cf. Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1067 (2d Cir. 1979).

The language of Rule 41 makes Chira's failure to comply with Judge Knapp's order a clear basis on which to affirm the dismissal. Chira's indolence, however, runs deeper, ᶜor beyond his failure to comply with the district court's specific directions for the prosecution of his suit, Chira failed to take any other action to move his case to trial. Completely aside from his failure to comply with the order, a dismissal is justified for Chira's failure to prosecute at all. *See Theilmann v. Rutland Hospital, supra; Redac Project 6426, Inc. v. Allstate Ins. Co.,* 412 F.2d 1043, 1047 (2d Cir. 1969). *See also Taub v. Hale,* 355 F.2d 201, 202 (2d Cir.)

---

**10.** *See Rene Boas and Associates v. Vernier,* 22 App.Div.2d 561, 562, 257 N.Y.S.2d 487, 489 (1st Dep't 1965) (Chira listed as "on the brief").

(per curiam), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1924, 16 L.Ed.2d 1020 (1966); *Joseph v. Norton Co.,* 273 F.2d 65 (2d Cir. 1959).

Because we find such strong grounds for dismissal in the first and third phrases of Rule 41(b), we need not deal at this time with the second phrase: "[f]or failure . . . to comply with these rules." Judge Knapp found that Chira had violated at least the spirit of the discovery rules in his objections to Lockheed's questions and document requests. Absent a court order compelling discovery, dismissal under Rule 37(d) was unavailable, and we need not reach the propriety of dismissal for discovery violations under Rule 41(b) in this case. *See Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers,* 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958).

### III.

Only on rare occasions should a district judge deprive the languid litigant of his right to a trial on the merits. It is with reluctance that an appellate court will approve a dismissal with prejudice. But fairness to other litigants, whether in the same case or merely in the same court (as competitors for scarce judicial resources), requires us to affirm and endorse the district court's action here. Burgeoning filings and crowded calendars have shorn courts of the luxury of tolerating procrastination.

Delays have dangerous ends, and unless district judges use the clear power to impose the ultimate sanction when appropriate, exhortations of diligence are impotent. While we agree that "a court must not let its zeal for a tidy calendar overcome its duty to do justice," *Davis v. United Fruit Co., supra,* 402 F.2d at 331, that same goal of justice, here in the guise of judicial administration, mandates our affirmance of the order of dismissal.