Gene MERKER and Timothy Ebneth, Plaintiffs-Appellants,

v.

Robin RICE, Gordon Car & Truck Rental, Avis Rent-A-Car Systems, Inc., Defendants-Appellees.

No. 1002, Docket 80–9108.

United States Court of Appeals, Second Circuit.

Argued April 9, 1981.
Decided May 26, 1981.

Philip Schlau, New York City (Newman & Schlau, P. C., New York City, Carole A. Burns, New York City, of counsel), for plaintiffs-appellants.

Douglas A. Boeckmann, Semel, McLaughlin & Boeckmann, New York City, for defendants-appellees.

Before FEINBERG, Chief Judge, LUMBARD and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Chief Judge:

Plaintiffs Gene Merker and Timothy Ebneth appeal from a judgment of the United States District Court for the Southern District of New York, Thomas P. Griesa, J., dismissing their action for want of prosecution. Because we conclude that the dismissal constituted an abuse of the district judge's discretion, we reverse and remand the case for trial.

I

Merker and Ebneth were injured in an automobile accident in January 1979, when the car in which they were passengers went out of control and hit the median divider of a highway on Long Island. Following the accident, Ebneth received emergency room treatment for a concussion, bruised ribs, and lacerations; Merker's injuries, including contusions and lacerations, required more than a week's hospitalization. After his release, Merker allegedly continued to suffer from dizziness, headaches, and arm weakness, which compelled him to resign from his job as a cargo agent for Air France in February 1979.

Plaintiffs brought this action in October 1979, alleging that the accident resulted from the "carelessness, recklessness and negligence of the defendants in the ownership[,] operation and control" of the car. After a period of discovery, which was completed with reasonable dispatch, the case was scheduled for trial beginning September 25, 1980. However, when informed that defendants' counsel would be unavailable at that time, the district court rescheduled the case for October 6, a Monday. On Friday, October 3, the clerk of the court informed plaintiffs that the case was to be put over once again, until October 7, because of the continuing unavailability of defendants' counsel. At this point, plaintiffs sought an additional delay because one of their two medical witnesses, Dr. Jesus Cheda, was scheduled to leave the country in the afternoon of October 7. The application was denied, however, and the court directed plaintiffs to proceed with the trial in the morning of October 7, beginning with the testimony of Dr. Cheda.

In accordance with the court's direction, the parties appeared in court on October 7. After the jury was selected and sworn, Judge Griesa explained the unusual order in which testimony would be presented, warning the jury that "[y]ou have to do a little bit in the way of mental gymnastics by taking that testimony [of plaintiff's doctor] and considering it before you have really heard about the accident from the plaintiff, the plaintiffs' standpoint, the events, but I don't think that will present you very much difficulty." Immediately after the opening statements, plaintiffs' counsel called Dr. Cheda to the stand, establishing through direct examination that Dr. Cheda had been plaintiff Merker's personal physician since June 1978, and had treated him both before

and after the accident. (He did not, however, treat Merker during the period of hospitalization immediately after the accident.) Dr. Cheda also explained the results of an electroencephalogram administered at the hospital, which indicated a mild right frontal temporal dysfunction.

Counsel then began putting a hypothetical question to Dr. Cheda, designed to ascertain whether such an injury might have been caused by an automobile accident. Before he had framed the question, however, counsel for the defendants objected and the judge excused the jury. Judge Griesa explained that he thought Dr. Cheda's testimony "was an imposition because this doctor has not added anything.... We have had the jury get a doctor before them who does nothing. If I had known this was going to happen, I would never have permitted it." He then solicited and granted a motion to strike the testimony. Evidently deciding that this alone was not enough, the judge went on:

> THE COURT: The problem is that the defense was absolutely right. The case should have proceeded with a factual presentation of the plaintiffs' evidence about the nature of the accident and it should not have started with a damage witness or a doctor unless that doctor was essential, had evidence which could not have been presented in any other way, and the doctor could not testify at any other time than this time.
>
> I was under the impression that this doctor was an essential, necessary witness. It is the only reason I overruled the objection of the defense. This doctor was not an essential and necessary witness. He has done practically nothing but read [hospital] records.... His testimony about his own examinations and treatments of the plaintiff was virtually trivial and I just sat here in amazement of this.
>
> I think there has been an unfairness here and I am not going to countenance it. I don't think you can rectify it by striking the testimony. What is the jury supposed to do, ignore all of this and reorient itself?

> I think there has to be a mistrial, we have to select a new jury and I would impose costs on the plaintiff.
>
> MR. LANZA [Defense counsel]: I so move.
>
> THE COURT: Motion granted.

Judge Griesa then offered plaintiffs' counsel the option of proceeding anew at two P.M. the same day, with evidence introduced in a more conventional sequence, or facing a dismissal on the merits for lack of prosecution. Plaintiffs' counsel objected that the testimony of Merker's "family physician" was essential to his proof, and that without it he would not be able to make a prima facie case. The judge rejected this contention and repeated the choice he had offered; when counsel responded that he could not proceed, the judge dismissed the case. Explaining his action to the jury, he recalled that the unusual sequence of testimony had been meant to accommodate Dr. Cheda. But, he added, Dr. Cheda had done "practically nothing but read or summarize records at institutions at which he was not present.... There are plenty of witnesses who don't have to go out of town who could have come in and interpreted the Smithtown [hospital] records, particularly somebody from Smithtown or somebody from Cabrini [hospital] could have interpreted the Cabrini records and they are not all going out of town today." Since plaintiffs were unwilling to proceed with other medical witnesses, he explained, the action was being dismissed.

Plaintiffs promptly filed a notice of appeal from the district court judgment.

## II

We start from the settled principle that dismissal for want of prosecution is a matter committed to the discretion of the trial judge. See, e. g., *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir. 1980); *Ali v. A & G Company, Inc.*, 542 F.2d 595, 596 (2d Cir. 1976). It is, however, an especially drastic remedy, reserved for "rare occasions," see *Chira*, supra, 634 F.2d at 668, and thus the judge's undoubtedly

wide latitude is conditioned by certain minimal requirements. The full character of the procedural history must, for example, be taken into account, see, e. g., *Davis v. Operation Amigo, Inc.*, 378 F.2d 101, 103 (10th Cir. 1967). In many cases, fairness to the plaintiff may also require that less severe alternative sanctions be considered, see *Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710, 712 (1st Cir. 1977). And in every case, the judge must take care to "strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . ." *Beary v. City of Rye*, 601 F.2d 62, 63 (2d Cir. 1979). As we have repeatedly warned, "a court must not let its zeal for a tidy calendar overcome its duty to do justice." *Peterson v. Term Taxi, Inc.*, 429 F.2d 888, 891 (2d Cir. 1970), quoting *Davis v. United Fruit Co.*, 402 F.2d 328, 331 (2d Cir. 1968), cert. denied, 393 U.S. 1085, 89 S.Ct. 869, 21 L.Ed.2d 777 (1969).

█ In this case, we believe Judge Griesa failed to strike a reasonable balance between plaintiffs' interests and those of the court and of the defendants. There was certainly no question of unpreparedness on plaintiffs' part or lack of good faith in preparing for trial in accordance with the court's direction. Plaintiffs appear to have acted with diligence at all stages of these proceedings. Nor was the problem posed for plaintiffs by Dr. Cheda's planned departure one for which plaintiffs could be held exclusively accountable. They were, after all, twice prepared to go to trial when the court granted defendants' motions for postponement because of the unavailability of their counsel. Moreover, the case was not one that had been languishing for a long period on the court's calendar: less than two weeks had elapsed since the original scheduled date for the trial. Finally, no suggestion has been made that an additional postponement of the case would have caused any undue harm or prejudice to defendants.

Under these circumstances, the only conceivable basis for penalizing plaintiffs so severely by a dismissal of their action would be a finding that their counsel acted improperly in refusing to proceed with the case available to him in the absence of his intended principal medical witness. In this connection, we agree with Judge Griesa's apparent view that it may be unreasonable for a plaintiff to insist on having medical records presented and interpreted by a particular doctor—especially one who was not involved in their preparation or in the tests and examinations to which they refer. No court need let itself be hamstrung by so finicky a plaintiff, who may reasonably be held responsible for making alternative arrangements when his preferred witness for such a task is or may be unavailable. See, e. g., *Medeiros v. United States*, 621 F.2d 468, 470 (1st Cir. 1980).

In this case, however, we do not believe that plaintiffs' counsel's unwillingness to proceed without Dr. Cheda can be regarded as clearly arbitrary or unreasonable. As plaintiff Merker's personal physician, and thus the only doctor familiar with his condition both before and after the accident, Dr. Cheda was uniquely situated to testify as to the effects of the accident. He was in a position to explain from first-hand knowledge whether Merker had suffered prior to the accident from dizziness or the other continuing impairments alleged in the complaint. In a case of this kind, such testimony might well prove of central importance. In this connection, we disagree with Judge Griesa's assertion that "[t]his is not a case where you have some subtle injury, some subtle back condition . . ."; while the immediate injuries suffered in the accident were perhaps not "subtle," proof of lingering physical and neurological impairment serious enough to compel Merker to quit his job—an essential element of his claim for damages—does involve more than an interpretation of hospital tests. Without Dr. Cheda's testimony, plaintiffs would be seriously hampered in showing that Merker's impairments were not attributable to causes predating the accident. The fact that the direct examination began with a discussion of the hospital tests—a discussion that could have been handled by another doctor—does not negate the broader impor-

tance of Dr. Cheda's testimony to plaintiffs' case. In short, we cannot see any reasonable basis for Judge Griesa's conclusion that the testimony was not necessary, especially since the judge's early intervention precluded its full development. Thus, we believe plaintiffs were unfairly deprived of the opportunity to present their best case.

Appellees' reliance on our decision in *Michelsen v. Moore-McCormack Lines, Inc.,* 429 F.2d 394 (2d Cir. 1970) (per curiam), is misplaced. In that case, the plaintiff and his doctor were both absent at the outset of the trial, and plaintiff's counsel refused to proceed with the elements of the case that were available, beginning with plaintiff's deposition. Plaintiff appealed the resulting dismissal of his action, arguing that "not only was [his] case not presented 'in its best light,' it was not presented at all." Id. at 396. We affirmed "precisely because plaintiff's case was 'not presented at all,'" reasoning that if plaintiff's counsel had proceeded and then requested an adjournment, he would have given the district judge a basis for assessing the importance of the absent doctor's testimony. Since he did not proceed, however, we recognized that the case did not even present "the question of whether or not it would have been an abuse of discretion if, after introduction of the available evidence, [the district judge] had refused to grant an adjournment" to permit the introduction of the doctor's testimony. We are satisfied that, as a practical matter, this case had proceeded to the stage that we found not to have been reached in *Michelsen,* and that for plaintiffs' counsel to have proceeded would have been an exercise in futility, especially since the judge had already expressed his view that Dr. Cheda's testimony was not essential.

For these reasons, we conclude that Judge Griesa abused his discretion in dismissing plaintiffs' action for want of prosecution. We therefore reverse the judgment of the district court, and remand for a trial before a different judge.