**James L. HARDING, Plaintiff-Appellant,**

v.

**FEDERAL RESERVE BANK OF NEW YORK, Defendant-Appellee.**

**No. 1009, Docket 82–7742.**

United States Court of Appeals, Second Circuit.

Submitted March 11, 1983.

Decided April 29, 1983.

Jacquelyn R. Bullock, Brooklyn, N.Y., for plaintiff-appellant.

Thomas C. Baxter, Jr., New York City (Don N. Ringsmuth, John S. Cassidy, New York City, of counsel), for defendant-appellee.

Before KAUFMAN and KEARSE, Circuit Judges, and MacMAHON, District Judge.*

KEARSE, Circuit Judge:

Plaintiff James L. Harding appeals from a final judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., *Judge,* dismissing his complaint, filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (1976 & Supp. IV 1980), for failure to comply with an order of the court governing the prosecution of the action. On September 2, 1982, the court had allowed plaintiff until September 22, 1982, to file an amended complaint in the action. Harding thereafter sought and obtained an extension until September 27 to file the amended complaint. When he sought, on September 27, a further extension of three days, his

---

* Honorable Lloyd F. MacMahon, Senior Judge of the United States District Court for the South-

ern District of New York, sitting by designation.

motion was denied and his action was dismissed. Harding contends that the dismissal constituted an abuse of discretion. For the reasons below, we agree and reverse the judgment.

## BACKGROUND

This action was commenced by Harding *pro se* on October 21, 1981. The complaint alleged that Harding had been employed by defendant Federal Reserve Bank of New York ("FRB") which had, in the terms and conditions of his employment, discriminated against Harding on the basis of his race, in violation of Title VII. In particular, Harding appears to have alleged that because of his race he had been denied promotion by FRB (FRB brief on appeal at 4), and that in retaliation for his complaints to the Equal Employment Opportunity Commission ("EEOC") of discriminatory treatment, FRB had fired him. In February 1982, FRB served a motion to dismiss on the ground, *inter alia,* that Harding had not obtained a "right to sue" letter from the EEOC with respect to his claim of discriminatory treatment. On March 11, 1982, Jacquelyn R. Bullock, Esq., entered an appearance on behalf of Harding. After a March 19 hearing on FRB's motion, the court adjourned the motion until June 21, and directed Harding to obtain a right to sue letter in the interim.

The EEOC sent Harding a right to sue letter on or about April 26, sending a copy to FRB, and there ensued a series of procedural missteps. FRB, upon receiving its copy of the EEOC's letter, decided that its motion to dismiss had become moot, and on May 5 it served a notice that it would take Harding's deposition at 10:00 a.m. on June 1 at its offices. FRB did not, however, withdraw its motion to dismiss. On June 1, Bullock arrived at FRB's offices alone and announced that Harding would not appear, on the ground that a deposition was inappropriate in light of FRB's pending motion to dismiss.[1] FRB had received no prior indication that Harding would not appear

to be deposed. It promptly moved pursuant to Fed.R.Civ.P. 37 for an award of costs and attorneys' fees, and an order directing Harding to appear for his deposition.

FRB's Rule 37 motion was returnable on June 14. Bullock, however, did not appear in court to oppose the motion, apparently having misread the notice and believing this motion to be returnable on June 21, the return date of FRB's motion to dismiss. After Bullock was located and offered this explanation, the court adjourned the Rule 37 motion to June 21.

On June 21 both sides appeared before the court in connection with both outstanding motions. FRB withdrew its motion to dismiss the complaint and filed an answer to the complaint. As to the Rule 37 motion, the court ordered that it be withdrawn without prejudice and reprimanded both parties for their inability to conduct discovery without judicial intervention. The court directed Harding to appear for deposition on July 1, 1982.

Harding appeared for his deposition on July 1. He was deposed for a total of five days until, on July 27, FRB had concluded its questioning of him. On July 12, FRB served on Harding a request for the production of documents. Harding timely complied, producing a total of 269 pages of documents.

On July 27, Harding served notice of a motion to amend his complaint. A proposed amended complaint was attached to the motion, alleging, *inter alia,* that FRB had "discriminated against plaintiff, a black employee, with respect to terms, conditions, privileges, advantages and benefits of employment with defendant." By order dated September 2, 1982 ("September 2 Order"), the court ruled that the proposed amended complaint did not comply with Fed.R.Civ.P. 8, but that plaintiff should be given an opportunity, in the interests of justice, to file a compliant complaint:

In the interests of Justice, plaintiff's counsel may serve and file within twenty

---

1. In fact, Harding did appear at FRB's offices at about 10:30 a.m., explaining that Bullock had told him to meet her there. Bullock, by that time, had left.

(20) days from the date hereof, an amended complaint which shall be simple, concise and direct, and shall comply with Rule 8, F.R.Civ.P.

September 2 Order.

By the terms of the September 2 Order, Harding's new complaint should have been filed on or before Wednesday, September 22. Plaintiff was not heard from, however, until Friday, September 24, when Bullock telephoned Judge Brieant's chambers to request an extension until Monday, September 27, to file the amended complaint. This ex parte request was granted. On September 27, Bullock filed a written application for another short extension, stating that she had not been able to prepare the new amended complaint because she had been engaged as a hearing examiner in Kings County Family Court for most of the period already allowed. She requested an additional three days, until September 30.

The court denied this application and dismissed the action. Its order, endorsed on the back of Bullock's application, read, in pertinent part, as follows:

Treating this paper as a motion to enlarge time the motion is denied. The Clerk shall enter a final judgment dismissing the action.

Order filed September 28, 1982. Judgment dismissing the action was entered on September 29. Harding immediately appealed to this Court.

Thereafter Harding moved pursuant to Fed.R.Civ.P. 60(b) to vacate the judgment, arguing that the failure to file the amended complaint had been "an inadvertence due to the fact that counsel for the plaintiff was engaged during the time granted to file the amended petition not on another matter, but as a Family Court Hearing Officer, an obligation she was not in a position to put aside." (Plaintiff's memorandum in support of Rule 60(b) motion at 8.) Harding urged the court to lift its "unduly harsh sanction" against him. (Id. at 9.)

A hearing was held on Harding's motion on October 22, following which the court denied the motion for reasons expressed during the hearing. Those reasons included the court's views (1) that the case, pending since October 1981, had "not got off the ground" (Oct. 22, 1982 Tr. ("Tr.") at 13); (2) that Harding's actions had intolerably burdened the court's efforts to manage its civil docket (e.g., id. at 9–10); and (3) that there was no merit to Harding's Title VII contentions, which the court described as claiming that "all of a sudden they developed a racial animus against him and discharged him for reasons of discrimination after he worked there 10 years" (id. at 4). All three considerations were summarized by the court as follows:

THE COURT: . . . .

The Court has inherent power to control its docket and to make reasonable dates by which people must do things, and the entire history of this case is characterized by non-compliance and failure to prosecute and failure to take serious[ly] the Court's direction.

The Court gave you an extension of time by telephone on one occasion when you asked for it, and even that procedure is doubtful in my mind, although we do it, and that wasn't enough. You wouldn't even live with that.

When the Court holds meetings with counsel and makes memorandum decisions and says when things should be done, those dates aren't arbitrary, they are not capricious, they are essential to the administration of justice, and we have to make our scheduling practices stick, even if it causes embarrassment to some attorney or even if it causes a hardship to some litigant who has selected an attorney who didn't comply.

So that's really my view of it. It is nothing personally disrespectful[ ] to you, Miss Bullock, or your client.

I know it is a hard case when a man works for 10 years and then he's out. Ordinarily, however, if someone is going to be discriminated against, that discrimination usually takes place at the point of hire or prior to the point of hire.

The retaliation claim at most presents an issue of fact. Somebody is going to swear that he was incompetent on this

other job. Somebody else is going to swear that he was great, so it must have been because of retaliation.

So I don't think you show the kind of overwhelming equity which would entitle you to be relieved from the default.

The Court adheres to its prior determination in this matter and the motion presently before the Court today is denied for the reasons set forth in the transcript.

(*Id.* at 17–19.) Harding filed an amended notice of appeal to encompass the court's October 22 order as well as the judgment filed in September.

## DISCUSSION

■ It is, of course, well established that dismissal pursuant to Fed.R.Civ.P. 41(b) for lack of prosecution or for failure to comply with an order of the court is a matter committed to the discretion of the district court, *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982), and that although dismissal is "a harsh remedy to be utilized only in extreme situations," *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam); *accord Merker v. Rice,* 649 F.2d 171, 173–74 (2d Cir.1981), it will be upheld on appeal unless the court has abused its discretion, *e.g., Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666 (2d Cir.1980). In conducting its review, the appellate court will assess the dismissal in light of the record as a whole, *Lyell Theatre Corp. v. Loews Corp., supra,* 682 F.2d at 43; *Merker v. Rice, supra,* 649 F.2d at 174, and will take into account such factors as the duration of the plaintiff's failures, *e.g., Lyell Theatre Corp. v. Loews Corp., supra,* 682 F.2d at 43; *Schenck v. Bear, Stearns & Co.,* 583 F.2d 58, 60 (2d Cir.1978), whether the plaintiff had received notice that further delays would result in dismissal, *id.* at 59; *Lyell Theatre Corp. v. Loews Corp., supra,* 682 F.2d at 43, whether the defendant is likely to be prejudiced by further delay, *id.; Merker v. Rice, supra,* 649 F.2d at 174, whether the district judge has "take[n] care to 'strik[e] the bal-

ance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . .'," *id.* (quoting *Beary v. City of Rye,* 601 F.2d 62, 63 (2d Cir.1979)), and whether the judge has adequately assessed the efficacy of lesser sanctions, *Merker v. Rice, supra,* 649 F.2d at 174; *Chira v. Lockheed Aircraft Corp., supra,* 634 F.2d at 665 ("The remedy is pungent, rarely used, and conclusive. A district judge should employ it only when he is sure of the impotence of lesser sanctions." (footnote omitted)).

■ Our review of the record in the present case persuades us that, irksome as Harding's attorney's several derelictions may have been, none of the above factors favored imposition of the sanction of dismissal. First, notwithstanding the court's statements that since its inception the case had "not got off the ground" (Tr. 13), and that "the entire history of this case is characterized by non-compliance and failure to prosecute" (*id.* at 17), the record reveals that, after the aborted deposition in June, Harding complied completely with all of FRB's discovery demands. He appeared on five days for his deposition, which was completed; he timely produced 269 pages of documents; and we see no indication that any FRB discovery requests remained unanswered. The case had been pending less than a year when it was dismissed, and so far as we are aware, the only unauthorized periods of delay after Harding obtained counsel in February 1982 were (1) the month of June, in which Harding did not appear for his deposition, FRB moved for Rule 37 sanctions, and the court criticized both Harding and FRB, and (2) the two-day period between September 22, when the amended complaint was first due, and September 24 when the first three-day extension was requested. The court's statements that the case had "not got off the ground" and that "the entire history of the case [was] characterized by non-compliance and failure to prosecute" were simply inaccurate.

Further, we are concerned that the court's assessment of the potential validity of Harding's claims may have reflected a misapprehension of the nature of the claims, or of Title VII principles, or of both. Section 703(a) of Title VII makes it unlawful for an employer to, *inter alia,* "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). All of Harding's complaints sought to invoke this provision. His *pro se* complaint, as interpreted by FRB, alleged that he had been denied promotion because of his race. His first proposed amended complaint alleged that FRB had discriminated against him "with respect to terms, conditions, privileges, advantages and benefits of employment." His second proposed amended complaint[2] alleged that FRB had discriminated against him with respect to "performance evaluations, salary increases, promotions and work assignment." Yet the district court viewed Harding as claiming that "all of a sudden they developed a racial animus against him and discharged him for reasons of discrimination after he worked there 10 years" (Tr. 4), and it expressed the view that "[o]rdinarily ... if someone is going to be discriminated against, that discrimination usually takes place at the point of hire or prior to the point of hire" (*id.* at 18). Since these views neither accurately characterize Harding's claim nor accurately reflect Title VII analysis, the court's effort to weigh Harding's right to due process against the court's concern for calendar congestion was flawed.

In addition, it is difficult to believe that allowing Harding an additional three days in which to file a new amended complaint—giving him, in all, less than one month from the granting of that privilege "[i]n the interests of Justice" (September 2 Order)— would in any way have prejudiced FRB. Certainly the court did not find that there would be any such prejudice. Nor did FRB point to any. In fact, although FRB filed written opposition to Harding's motions at every turn, largely on technical grounds of Bullock's failures to comply with various rules, it never once pointed to any respect in which allowing Harding additional time to file a new complaint would harm it.

Finally, even if we believed that the denial of a three-day extension of time to amend in these circumstances was within the spirit of the Rules, and upheld that ruling, we would find no justification for the court's drastic sanction of dismissing the action. This was not a case in which the original complaint failed to state a claim on which relief might be granted, thus requiring plaintiff to amend or abandon suit. Rather there was an existing complaint that was sufficient in the eyes of FRB,[3] and had not been ruled otherwise by the court.[4] Yet there is no indication that the court even considered simply denying the requested extension and allowing the case to proceed on the existing pleadings, or seriously considered any other lesser sanction:

> THE COURT: The Court allowed you to have that extra time [until September 27].
>
> MS. BULLOCK: I understand that.
>
> THE COURT: Now you're coming back and you're saying that even that wasn't enough.
>
> MS. BULLOCK: No, I am saying to the Court that dismissal of the entire

---

2. Harding's second proposed amended complaint was filed as an attachment to his Rule 60(b) motion.

3. FRB's motion to dismiss, which was eventually withdrawn, did not challenge the sufficiency of the original complaint. Indeed, in opposing Harding's motion to amend, FRB stated, *inter alia,* that in its opinion (which we recognize may not have been objective), "the *pro se* Complaint is a better pleading than the Complaint prepared by counsel. Accordingly, Plaintiff

will not be prejudiced by denial of the subject Motion." (FRB response to motion to amend, dated July 29, 1982, at 4–5.)

4. In these circumstances it seems highly unlikely that plaintiff could have anticipated that failure to meet the deadline to file the amended complaint would result in the dismissal of the existing sufficient complaint. And the record does not indicate that the court gave any notice that this would occur.

action was a remedy that was unduly harsh and that my client—

THE COURT: I suppose it is foolish to ask you what kind of remedy would not be unduly harsh?

MS. BULLOCK: What kind of remedy would not be unduly harsh?

THE COURT: We can't put up with this, Miss Bullock, we really can't.

(Tr. 12.)

In sum, in the context of a case not yet one year old, the court, which had granted a twenty-day period in which Harding might prepare an amended complaint "[i]n the interests of Justice," refused to grant more than five days' additional time, and instead dismissed the original complaint which was apparently sufficient. Its stated rationale reflected erroneous premises as to the progress of discovery, the nature of the plaintiff's claim, and the appropriate legal framework within which that claim was to be judged. The dismissal was ordered without notice, without any suggestion that the requested three-day extension would prejudice the defendant, and without any apparent consideration of lesser sanctions.

We conclude that the district court abused its discretion in dismissing the action. We reverse the judgment and remand for further proceedings.

MacMAHON, District Judge, concurring:

I concur in the result.

The ultimate teaching of the cases cited in Judge Kearse's opinion is that the safe and sure course for a district judge to follow when attorneys fail to observe time limits, whether set by the rules or by court orders, is to grant all requests for extensions of time and continuances. A request for only three more days in which to file an amended complaint seems so reasonable on its face that it is hard to imagine why any judge would deny it, much less impose the sanction of dismissal for noncompliance with the court's order or for the failure to prosecute. Yet, if multiplied over and over for one reason or another in one case after another, as it surely is and would be once the bar realizes that deadlines mean noth-

ing, the net result is the build-up of a paralyzing backlog of pending cases. Ultimately, the congestion becomes so great that aggrieved citizens are denied effective access to the courts.

Judge Brieant should be commended for not taking the easy course and for attempting, albeit futilely, to manage his docket, not just to accommodate one bungling attorney but to serve the public interest in the just, speedy and inexpensive disposition of all of the cases on his docket. This experienced, conscientious, and able judge takes seriously the truism that justice delayed is justice denied. This case had been pending for almost a year, yet the pleadings were not finally closed. True, plaintiff had belatedly submitted to a deposition, but not until after defendant had moved for sanctions and after plaintiff's attorney had failed to appear in opposition to the motion. More of the same calendar clutter was clearly predictable, for an amended complaint makes new claims requiring an amended answer and still more discovery and other pretrial proceedings. We might well inquire what the state of the docket would be in the nation's busiest and largest district court if every case on the court's docket had a history of this one, with its "several derelictions," "procedural mistakes," and general misuse and waste of the court's time. Under the circumstances, Judge Brieant, I think, was compelled to do something to put an end to further missteps and delays. Nevertheless, I must concur because I agree that he erred in failing to give due regard to lesser remedies and also in his appraisal of the merits of plaintiff's claims.

As noted above, I agree with Judge Brieant's conclusion that the case had "not got off the ground," but for that very reason less drastic remedies than dismissal could easily have solved his calendar problems. More importantly, for the same reason Judge Brieant was simply in no position to make an accurate assessment of the merits of plaintiff's claims. Nevertheless, in characteristic kindness and concern with plaintiff's plight, he attempted to soften

the blow by explaining that it really did not matter because, in his view, there was no merit to the claims anyway.

Racial discrimination nowadays is apt to be so subtle that it cannot be seen in its stark reality without a full exposition of the facts in a plenary trial. However wise the instincts and assumptions of this seasoned judge, his recollection and analysis of plaintiff's claims, knowledge of the facts respecting them, and comprehension of the applicable law were necessarily superficial, incomplete, and flawed, and as a result, I think, plaintiff was denied his due process right of a fair chance to be heard.

Accordingly, I concur in the result.