**Thomas DODSON, Plaintiff–Appellant,**

v.

**Marvin RUNYON, Postmaster General for the U.S. Postal Service, Defendant–Appellee.**

No. 293, Docket 95–6035.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1995.

Decided June 12, 1996.

Antonio Mareno, Yorktown Heights, NY, for Plaintiff–Appellant.

James L. Cott, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, New York City, of counsel), for Defendant–Appellee.

Before: WINTER, JACOBS, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Thomas Dodson, acting *pro se*, brought a complaint alleging that he was terminated from his job with the United States Postal Service because of his race, in violation of 42 U.S.C. §§ 2000e to 2000e–17 ("Title VII") and 42 U.S.C. § 1981. Although he attempted energetically to prosecute his case while he was *pro se*, all progress ceased when he retained an attorney. Eventually, the district court granted the government's motion to dismiss for failure to prosecute. *See* Fed. R.Civ.P. 41(b). We find that the district court erred by failing to consider lesser sanctions and other relevant factors before imposing the severe penalty of dismissal. We therefore vacate, and remand for further proceedings.

### Background

Dodson was a probationary employee at the Post Office in Croton–on–Hudson, New York. He was terminated from this position in May 1985, as a result of an unfavorable evaluation, which he alleges was motivated by racial animus. Proceeding *pro se* and *in forma pauperis*, Dodson pressed his claims vigorously. He began by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). When the EEOC rejected his claims, Dodson received a right-to-sue letter and promptly filed a complaint in the United States District Court for the

Southern District of New York on June 15, 1987. The district court dismissed the complaint because Dodson had named the Postal Service as defendant rather than naming the Postmaster General.

Still proceeding *pro se,* Dodson filed a motion pursuant to Fed.R.Civ.P. 60(b), seeking an order "relieving him from the judgment entered in this Court on June 28, 1988, and for the entry of a new judgment that will allow him to perfect an appeal to the Court of Appeals." In response to this motion and an intervening change of law, the government modified its earlier position that Dodson was barred on statute of limitations grounds from amending his complaint to correct the pleading error. The district court denied Dodson's Rule 60(b) motion, but vacated its prior order in part, giving Dodson thirty days to amend his complaint.

On May 1, 1989, Dodson filed an amended complaint. The government answered on May 9. The parties then commenced discovery. The government served interrogatories and document requests in July, and noticed Dodson's deposition for October 24, 1989. Still unrepresented, Dodson appeared and gave his deposition.

Dodson then retained counsel, Antonio Mareno, Esq. In May of 1990, Mareno served a deposition subpoena on the government, seeking the testimony of Frank Ozimek, Dodson's supervisor at the time of his discharge. Although Ozimek was no longer employed by the federal government, the government nevertheless arranged for him to be deposed. The deposition was taken on June 20, 1990. So far as the record reflects, that was virtually the last step Mareno took to advance his client's case.

Over two years later, on September 8, 1992, the government wrote to the trial judge pursuant to his rules seeking permission to file a motion to dismiss the action for failure to prosecute, or for summary judgment. Neither the district court nor Dodson's attorney responded to this letter. In January 1993, the government filed its motion to dismiss. Dodson's lawyer filed papers in opposition, but took no further steps to prosecute the case while the motion remained *sub judice* for two years. In February of 1995, the trial judge granted the government's motion, and dismissed Dodson's claim pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute. Dodson appealed.

### *Discussion*

### I.

A problem repeatedly faced by trial courts in exercising their discretionary control over case management is how to sanction dilatory conduct by litigants. When delay is caused by a plaintiff, the defendant often seeks dismissal of the cause of action as a sanction.

■ The selection of the appropriate sanction, including dismissal for failure to prosecute, is a matter consigned to the discretion of the district court, *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Alvarez v. Simmons Mkt. Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988), and we review the district court's ruling for abuse of that discretion, *Nita v. Connecticut Dep't of Envtl. Protection,* 16 F.3d 482, 485 (2d Cir.1994). We have long recognized that dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness.[1] And, we have repeatedly noted that one of the factors that should inform a trial court's decision is the suitability of lesser sanctions. *See, e.g., Colon,* 56 F.3d at 7; *Jackson,* 22 F.3d at 74; *Nita,* 16 F.3d at 485. "The remedy [of dismissal] is pungent, rarely used, and conclusive. A district judge should employ it only when he is sure of the impotence of lesser sanctions." *Chira,* 634 F.2d at 665 (footnote omitted).

This is not, of course, the only relevant consideration, though it is a very important one. We have listed various factors as perti-

**1.** *See Colon v. Mack,* 56 F.3d 5, 7 (2d Cir.1995); *Jackson v. City of New York,* 22 F.3d 71, 75 (2d Cir.1994); *Romandette v. Weetabix Co.,* 807 F.2d 309, 312 (2d Cir.1986); *Harding v. Federal Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983); *Merk-*

*er v. Rice,* 649 F.2d 171, 173–74 (2d Cir.1981); *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980); *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam).

nent to the question whether dismissal is an appropriate remedy, including:

"[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and [5] whether the judge has adequately assessed the efficacy of lesser sanctions."

*Alvarez,* 839 F.2d at 932 (quoting *Harding,* 707 F.2d at 50) (internal quotations omitted). No single factor is ordinarily dispositive. *Nita,* 16 F.3d at 485.

 In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the delay. In making this statement, we are cognizant of the fact that a client is ordinarily bound by the acts of his lawyer, and this—of course—extends to behavior that would justify a dismissal for failure to prosecute. *Link,* 370 U.S. at 633–34 & n. 10, 82 S.Ct. at 1390 & n. 10; *cf. Pioneer Inv. Servs. v. Brunswick Assocs.,* 507 U.S. 380, 396–98, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993).[2] Nothing we say today contradicts that basic principle. This principle, however, does not relieve the district court of the obligation to consider the relevant factors before dismissing an action—especially the suitability of lesser sanctions. When the district court considers the appropriate sanction for failure to prosecute an action, the more the delay was occasioned by plaintiff's per-

sonal obstruction, or was designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal. Conversely, the more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer.

Numerous circuits, with the support of leading commentators, have indicated that, at least absent prejudice, dismissal for failure to prosecute is inappropriate where the fault clearly lay in the lawyer's failure to attend to his client's business, and the court failed to consider alternative sanctions. *Hillig v. Commissioner,* 916 F.2d 171, 174 (4th Cir. 1990); *Shea v. Donohoe Constr. Co.,* 795 F.2d 1071, 1077–78 (D.C.Cir.1986); *In re Hill,* 775 F.2d 1385, 1387 (9th Cir.1985) (per curiam); *In re Russell,* 746 F.2d 1419, 1420 (10th Cir.1984) (per curiam); *Rogers v. Kroger Co.,* 669 F.2d 317, 321–23 (5th Cir.1982); *Carter v. City of Memphis,* 636 F.2d 159, 161 (6th Cir.1980); *Moore v. St. Louis Music Supply Co.,* 539 F.2d 1191, 1193 & n. 2 (8th Cir. 1976); *see also Ball v. City of Chicago,* 2 F.3d 752, 758 (7th Cir.1993); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 2369 nn. 74–76 (1971).[3] We have long-suggested imposing sanctions directly on dilatory lawyers in appropriate cases, and we continue to commend to our district judges this "sound practice." *Ball,* 2 F.3d at 758. *See Litton Sys. Inc. v. AT & T Co.,* 700 F.2d 785, 828 (2d Cir.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984); *Cine Forty–Second St. Theatre Corp. v. Allied Artists,* 602 F.2d 1062, 1069 (2d Cir.1979) (Oakes, J., concurring); *Schwarz v. United States,* 384 F.2d 833, 836 (2d Cir.1967); *cf. Baker v. Latham Sparrowbush Assocs.,* 72 F.3d 246, 253 (2d Cir.1995).[4]

---

**2.** *Pioneer* is not directly pertinent because in that case the plaintiff had defaulted, and the question was whether the plaintiff should be relieved of the default on the grounds that it had been caused by excusable neglect. Here no default has occurred. The district court rather faced a discretionary decision whether to impose sanctions and, if so, what sanctions.

**3.** *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417–18 (5th Cir.1995), is not the contrary. There,

although the delay was attributable to counsel, the attorney's obstruction was for the apparent benefit of the client, making dismissal quite appropriate.

**4.** Some circuits require that district courts provide notice directly to the client before dismissing for failure to prosecute. *See, e.g., Dunbar v. Triangle Lumber & Supply Co.,* 816 F.2d 126, 129 (3d Cir.1987); *Shea,* 795 F.2d at 1078. Others disagree. *See Ball,* 2 F.3d at 756 ("The district

Of course, other factors may also be relevant, including those set forth in *Alvarez*. In particular, where opposing parties are found to have been meaningfully prejudiced by a plaintiff's delay, this factor speaks strongly in favor of dismissal, and may well override the hardship to plaintiff. *See Shea*, 795 F.2d at 1074–75.

## II.

In this case, some of the pertinent factors seem to favor dismissal; others appear to favor a lesser sanction. But none of the relevant factors were considered by the district court.

■ Most importantly, although a number of alternative remedies were available, *see Shea*, 795 F.2d at 1078–79 (describing possible alternative sanctions), the district court failed to consider the possibility of alternative penalties before imposing the "drastic remedy," *Merker v. Rice*, 649 F.2d 171, 173 (2d Cir.1981), of dismissal. *See, e.g., Colon*, 56 F.3d at 7. Notably, instead of dismissing the case, the court might have imposed financial penalties on the lawyer, the client, or both.

There was excellent reason to consider imposing penalties on Dodson's lawyer, rather than on Dodson. The record strongly suggests that it was Dodson's lawyer, not Dodson, who was responsible for failing to advance the case. Furthermore, it appears that the attorney caused the delay in derogation of, rather than to benefit, his client's interests. Prior to Dodson's retention of an attorney, he had actively pursued his cause, first before the EEOC, and then in the district court. Only after counsel was hired did progress cease. The attorney's inaction stands in stark contrast to the plaintiff's vigorous efforts to advance his cause before he was represented. And, it appears that the attorney's delays were not designed to benefit the plaintiff's strategic interests.

Mareno's spurious justifications of his behavior proffered in this court tend to confirm that he, not the plaintiff, was responsible for the delay. In bringing this appeal, Mareno casts blame in all directions. The trial judge, Mareno claims, abdicated his duty under Fed.R.Civ.P. 16(b) to impose a scheduling order. He contends that "in the federal venue the attorney gets his or her marching orders . . . from the trial judge." He argues that, in the absence of a scheduling order, he was barred from engaging in discovery or taking other action to advance the case. The government, Dodson's lawyer argues further, abdicated its "responsibilities of conscience" by failing to aid plaintiff's cause sufficiently.

These claims are entirely frivolous. It was the attorney's responsibility to press his client's case. *See, e.g., Lukensow v. Harley Cars*, 124 F.R.D. 64, 66 (S.D.N.Y.1989) ("It is not the duty of the Court . . . to contact plaintiffs and to urge or require them to prosecute this action, nor are defendants under any duty to take any steps to bring this case to trial."). And whatever counsel's responsibility in the first instance, it was intensified upon his receipt of the government's letter indicating its intent to move for dismissal. *See GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1201 (7th Cir.1993) (noting that "an earlier lack of diligence is not grounds for dismissal when the plaintiff is currently displaying diligence") (quoting *Marks v. San Francisco Real Estate Bd.*, 627 F.2d 947, 948 (9th Cir. 1980)).

■ While it is true that government attorneys have an ethical obligation to be fair to opponents, *cf. Zimmerman v. Schweiker*, 575 F.Supp. 1436, 1440 (E.D.N.Y.1983), this duty does not require the government as defendant to prosecute a plaintiff's case for him. Similarly, although the trial judge should enter a scheduling order, *see* Fed. R.Civ.P. 16(b), the judge's failure to do so does not relieve counsel of either the right or the duty to press his client's cause. Counsel was free to pursue discovery without a scheduling order. Mareno apparently recognized

---

judge has . . ., though not the duty[,] the power to notify the plaintiff of the impending demise of his suit as a result of his lawyer's delicts and omissions and to give the plaintiff an opportunity to retain substitute counsel. . . ."). Without rul-

ing on the question, we encourage district judges to give notice directly to the client where there is reason to suspect that attorney incompetence is about to sink a client's case, so that the litigant may attempt to remedy the situation.

**42**

this, as he noticed and took the deposition of Ozimek in 1990. Furthermore, if Mareno felt some advantage was to be gained by a scheduling conference, he could have requested one at any time.

■ There is no way for us to be certain, of course, that Dodson was not somehow complicit in his attorney's delays, nor that the delays were not undertaken by Mareno for Dodson's benefit. Those are matters of fact for the district court to assess. The district court did not explore these issues or the efficacy of alternative sanctions before dismissing Dodson's case. As we have noted, dismissal is a remedy that a district judge should generally impose "only when he is sure of the impotence of lesser sanctions." *Chira*, 634 F.2d at 665.

In remanding for reconsideration, we make no suggestion as to what conclusions the district judge should reach. Our reversal of the dismissal order is not intended to suggest that dismissal is not an appropriate remedy. We recognize that some of the factors suggested in *Alvarez*, in particular the possibility of prejudice to the government, may well argue in support of dismissal.

*Conclusion*

For the reasons set forth above, the judgment of the district court is vacated. We remand for further proceedings consistent with this opinion. Plaintiff's attorney is directed to furnish a copy of this opinion to his client. The district court shall insure that this order has been complied with.