**In re George WHITE and Johnnie Mae White, Debtors.**

**Dorothy EISENBERG, Trustee of the Estate of George and Johnnie Mae White, Plaintiffs,**

**v.**

**George and Johnnie Mae WHITE and Herman & Natale, a Law Firm, and Robert Alexander, Defendants.**

**Bankruptcy No. 882–81246–20.**
**Adv. No. 884–0091–20.**

**United States Bankruptcy Court, E.D. New York.**

**Aug. 23, 1984.**

John Westerman, Shaw, Goldman, Lici-
tra, Levine & Weinberg, P.C., Garden City,
N.Y., for trustee Dorothy Eisenberg.

Eugene Natale, Herman & Natale, Gar-
den City, N.Y., for defendant Herman &
Natale.

Leslie Martin, Garden City, N.Y., for de-
fendant and cross-claimant Robert Alexan-
der.

**ROBERT JOHN HALL,** Bankruptcy
Judge.

On May 12, 1982, the Debtors, George
and Johnnie Mae White, (the "Whites")
filed a voluntary petition for relief under
Chapter 7 of the Bankruptcy Code. On
May 19, 1982 Dorothy Eisenberg was ap-
pointed Trustee for the Debtor's estate.
The Whites' major asset was a tavern and
restaurant located at 678 Union Avenue in
Westbury, New York (the "property"). On
August 9, 1983 the court approved the sale
of the property to Alvin Davis for the sum
of $70,000.00. On September 1, 1983
George White entered into a lease and pur-
chase agreement, as landlord and owner,
with Robert Alexander, as tenant and buy-
er, for the very same property that was the
subject of the court approved sale by the
Trustee to Alvin Davis.

On February 23, 1984 the Trustee com-
menced this adversary proceeding against
the Whites, Robert Alexander and the debt-
ors' attorneys, the law firm of Herman &
Natale, seeking damages arising out of al-
leged fraud and post petition transfers of
estate property. The Whites have default-
ed to the charges against them. Robert
Alexander has denied any wrongdoing. As
an affirmative defense against the charges
of the Trustee and as a counterclaim
against the Whites and Herman & Natale,
Alexander alleges that he was fraudulently
induced by George White and Herman &
Natale to enter into the lease and purchase
agreement.

## FACTS

The parties are essentially in agreement over the terms of, and the parties' actions pursuant to, the lease and purchase agreement that George White and Robert Alexander entered into on September 1, 1983. The lease was for a three year term with a monthly rent of $1,000.00. In order to execute the lease agreement Alexander tendered a binder check in the amount of $200.00 to George White on August 15, 1983. The lease granted Alexander an option to purchase the property for $100,-000.00. On September 2, 1983 Alexander paid $9,000.00 to George White as a downpayment on the purchase of the property. Pursuant to the lease agreement, Alexander made payments of $1,000.00 to George White on October 3 and November 4, 1983. On December 3, 1983 Alexander made a rental payment of $700.00 to George White. Alexander testified at his deposition that $300.00 was deducted from December's rent to repay Alexander for a personal loan he had made to George White. Alexander further testified that the Whites waived September's rent in consideration for Alexander's preparation of the tavern and restaurant for reopening.

The parties further agree that late in September of 1983, Eugene Natale, of defendant law firm Herman & Natale, held a meeting with George White and Robert Alexander at the law offices of Herman & Natale. According to the testimony of Alexander and the affidavit filed by Eugene Natale, it was at this meeting that Natale first became aware that Alexander had given White $9,000 toward the purchase of the building and business. Alexander and Natale also agree that at this same meeting Natale informed Alexander of the bankruptcy proceeding that the Whites were involved in, and the fact that the court had already approved a sale of the premises at 678 Union Avenue.

On September 28, 1983, the law firm of Herman & Natale was substituted for Mark Rosenberg, Esq. as attorneys for the Whites in this bankruptcy proceeding. Herman & Natale drew up a contract between the Whites and Alexander for the sale of the tavern and restaurant at 678 Union Avenue and this contract was executed by the parties on October 19, 1983. Pursuant to this contract Alexander tendered $2,000.00 as a further downpayment on the purchase of the property. This $2,000.00 downpayment was held by Herman & Natale in escrow and later returned to Alexander. Herman & Natale filed an Order to Show Cause returnable before this court on November 10, 1983, seeking an Order vacating this court's August 9, 1983 Order authorizing the sale of the tavern and restaurant to Alvin Davis, and seeking an Order approving the sale of the premises to Alexander. The relief requested in the Order to Show Cause was denied.

Following the November 10, 1983 appearance, the Whites failed to remove themselves from the property. Consequently, the Trustee brought an Order to Show Cause before this court returnable December 6, 1983 seeking an Order holding the Whites in contempt for failure to vacate. Eugene Natale appeared in court on behalf of the Whites and requested that the Whites be granted 90 days within which to vacate. The court declined to find the Whites in contempt but ordered them to vacate the property immediately. The Whites again failed to vacate the property and the Trustee brought another Order to Show Cause before this court returnable December 28, 1983 seeking an Order holding the Whites in contempt of court. Michael Santo, Esq. of Herman & Natale appeared in court on behalf of the Whites. This court gave the Whites until January 11, 1984 to vacate the property. At none of these court appearances did Herman & Natale inform this court or the Trustee of the lease and purchase agreement between the Whites and Alexander. The Whites failed to vacate the property by January 11 and the Trustee obtained a Writ of Assistance from this court directing the United States Marshal to forcibly evict the debtors. The marshal promptly evicted the Whites and Alexander. According to his deposition, Alexander was mystified as to the reasons for his eviction and protested

to the marshal. Immediately thereafter the Trustee was informed of the agreement between Alexander and the Whites.

The Trustee is suing the Whites for $11,900.00 representing the total payments received by the Whites from Alexander ($200.00 binder, $9,000.00 downpayment on purchase and $2,700.00 in rent). The Trustee alleges that under 11 U.S.C. § 541, the proceeds from the sale or lease of the property were an asset of the bankruptcy estate, and that consequently, by not turning this money over to the Trustee, the Whites fraudulently misappropriated funds of the bankruptcy estate.

The Trustee is suing Robert Alexander for the same relief she seeks against the Whites. She alleges that, despite Alexander's knowledge of the bankruptcy proceeding, Alexander made rental payments to the Whites and entered into negotiations for the purchase of the premises and thus assisted the Whites in defrauding the bankruptcy estate.

The Trustee is suing Herman & Natale alleging that Herman & Natale knew of the Whites' fraudulent behavior and that as officers of the Bankruptcy Court they had an affirmative duty to report the Whites' behavior to the Trustee and the court. By not informing the Trustee and the court of the Whites' fraudulent behavior, the Trustee alleges that Herman & Natale contributed to the defrauding of the debtors' estate and therefore should be made to pay the Trustee punitive damages of $200,000.00.

Herman & Natale has denied any wrongdoing. Further, the law firm claims that the attorney-client privilege and its professional obligation to the Whites precluded Herman & Natale from informing the Trustee or the Bankruptcy Court of the lease and purchase agreement entered into by the Whites and Alexander.

Robert Alexander has filed a cross-claim against George White and Herman & Natale. Alexander alleges that White and Herman & Natale intentionally did not inform Alexander of his obligations pursuant to the bankruptcy laws and thus perpetrated a fraud upon Alexander. In addition, Alexander alleges that he paid Herman & Natale $500.00 for legal services in drawing up the October 19 contract for the sale of the premises and making an application to the court to set aside the original order to sell. The Trustee has submitted a copy of a receipt for a $500.00 payment purportedly given to Alexander and signed by Michael Santo, Esq. of Herman & Natale. Alexander alleges that in paying rental monies to the Debtor and in negotiating for the attempted purchase of the property, he relied upon the advice and expertise of Herman & Natale. Herman & Natale deny that they ever represented Alexander or breached any duty to him.

Based on these allegations, Alexander claims that the Whites and Herman & Natale must indemnify Alexander for any liability that might be found owing to the Trustee by Alexander. In addition, Alexander seeks $5,000.00 from George White and Herman & Natale for legal expenses incurred in defending this suit. Finally, Alexander claims that by virtue of their breach of duty as attorneys, Herman & Natale are liable to Alexander for $100,000.00 in punitive damages.

Herman & Natale has moved for summary judgment as to the Trustee's amended complaint and the claims of Robert Alexander. The Trustee has cross-moved for summary judgment against Herman & Natale. In addition, the Trustee and Alexander have moved against Herman & Natale, and Herman & Natale has moved against the Trustee and Alexander, for sanctions premised upon alleged abuses of the discovery process. These discovery motions will be treated separate from the motions for summary judgment.

DISCUSSION

Summary Judgment may only be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Rule 56(c) of the Federal Rules of Civil Procedure. A trial court's function on a motion for summary judgment is to determine whether any material factual issues are in dispute. *United Transp. Union v. Long Island R.R.*, 509 F.Supp. 1300, 1303 (E.D.N.Y.) *rev'd on other grounds*, 634 F.2d 19 (2d Cir.1980), *rev'd on other grounds*, 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982). A court must accept as true factual statements in the opposing party's affidavits and draw all permissible inferences in that party's favor. In addition, all doubts must be resolved in favor of the party opposing the motion. *Cullen v. BMW of North America, Inc.*, 490 F.Supp. 249, 251 (E.D.N.Y.1980); *American Mfrs. M.I. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir.1967).

■ The Trustee has charged Herman & Natale with fraudulent concealment, an offense that is particularly damning against an attorney. The elements of fraudulent concealment are (1) a relationship between the parties that creates a duty to disclose; (2) knowledge of the material facts by the party bound to make such disclosures; (3) non-disclosure; (4) scienter; (5) reliance; and (6) damage. *Leasing Service Corp. v. Broetje*, 545 F.Supp. 362, 366 (S.D.N.Y. 1982); *Cullen v. BMW of North America, Inc.*, 490 F.Supp. 249, 254 (E.D.N.Y.1980).

■ The Trustee alleges that Herman & Natale's duty to disclose arose from Disciplinary Rules 7–102(A)(7), (B)(1) and (2) of New York's Code of Professional Responsibility. 7–102(A)(7) forbids a lawyer to counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent. The Trustee argues that by providing legal services to the Whites and Alexander in connection with their lease and purchase agreement, Herman & Natale violated this disciplinary rule. 7–102(B)(1) provides that a lawyer who receives information establishing that his client has perpetrated a fraud shall reveal the fraud to the affected person or tribunal except when the information is protected as a confidence or secret. Under 7–102(B)(2) a lawyer who receives information clearly establishing that a person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal. The Trustee alleges that Herman & Natale knew that the Whites and Alexander were perpetrating an ongoing fraud and that therefore Herman & Natale was required by the Disciplinary Rules to disclose all information concerning the fraud.

Whether Herman & Natale violated any of these disciplinary rules depends upon the nature of the relationships and the communications between Herman & Natale and the Whites and Alexander. Herman & Natale was substituted as the Whites' attorneys of record on September 28, 1983. However, Herman & Natale had represented the Whites in prior matters. In addition, Alexander maintains that Herman & Natale performed legal services for him for a fee. Herman & Natale deny this and maintain that they had always made it clear to Alexander that they only represented the Whites. As these facts and allegations demonstrate, the exact relationships between the co-defendants are far from clear and undisputed.

Furthermore, Herman & Natale argue that all of its actions were performed in good faith and thus the scienter element of fraudulent concealment is not satisfied. Herman & Natale maintain that it attempted to salvage the property for the Whites and Alexander and at the same time obtain a higher price for the creditors. It also contends that the application was made to the court in the proper manner and that after the application was denied all escrow monies were returned to Alexander. In addition, Herman & Natale contend that the Trustee did not rely on Herman & Natale's non-disclosure of information. The Trustee, according to Herman & Natale, knew or had reason to know of the affairs of the Whites and took no action based on this knowledge.

In view of these disputed facts, it is clear that the Trustee has not established that Herman & Natale defrauded the debtor's estate. The precise nature of the relation-

ship and communications between the co-defendants must be established before the court can determine whether Herman & Natale had a duty to disclose the activities of the Whites and Alexander. Furthermore, the Trustee must prove that Herman & Natale had knowledge of the alleged fraudulent activity of the Whites and Alexander, at a time when Herman & Natale was under a duty to disclose such information. Finally, the Trustee must prove that she relied upon the non-disclosure.

Herman & Natale's motion for summary judgment with respect to the charges of the Trustee and Alexander likewise must fail because the same or similar issues of fact are in dispute. Herman & Natale and Robert Alexander are completely at odds on the issue of whether Herman & Natale ever represented Alexander or gave him reason to believe that it represented him. The copy of the receipt for Alexander's $500.00 purportedly signed by Mr. Santo undercuts the claims of Herman & Natale. The court is particularly anxious to resolve the conflicting claims on this issue. If the receipt establishes an attorney-client relationship, then the credibility of Natale is seriously affected. If Alexander was indeed never represented by Herman & Natale, then Herman & Natale's claim that the attorney-client privilege prevented it from disclosing the fraud is seriously undermined, as is explained below.

 Under both Federal and state law an attorney is prohibited from divulging confidential communications in the absence of a waiver by his client. *Republic Gear Co. v. Borg-Warner Corporation,* 381 F.2d 551, 556 (2d Cir.1967); N.Y.C.P.L.R. § 4503(A) (McKinney Supp.1983–84). The mere assertion of the attorney-client privilege, however, does not automatically defeat the charges of the Trustee. The attorney-client privilege only applies if:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate, and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed, and (b) not waived by the client.

*United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358–59 (D.Mass.1950).

Herman & Natale contends that it never represented Robert Alexander. Eugene Natale also claims he first learned of the $9,000 payment made to White by Alexander at a meeting held in his office in September of 1983, at which George White and Alexander were both present. If both of these assertions are true, then the pertinent communication between the Whites and Natale took place in the presence of one other than his client, thereby perhaps destroying the attorney-client privilege. In addition, Herman & Natale has been charged by the Trustee with fraudulent concealment. Communications in the aid of fraud are not protected by the attorney-client privilege. *U.S. v. Mackey,* 405 F.Supp. 854, 860 (E.D.N.Y.1975). Thus, both the issues of whether Herman & Natale represented Alexander, and whether the allegedly privileged communications were made in the furtherance of fraud, prevent the court from granting Herman & Natale's motion.

In further support of its motion for summary judgment, Herman & Natale has alleged that the complaints of the Trustee and Robert Alexander are defective because they do not contain sufficient particularity. Herman & Natale maintain that since the Trustee and Alexander refer to Herman & Natale as a group, it is unclear which member of the firm advised the Whites and Alexander. On a motion for summary judgment, however, the court

may not confine itself to the pleadings. Rule 56(c) of the Federal Rules of Civil Procedure mandates that the court consider Herman & Natale's own affidavits before rendering summary judgment. In his affidavits, Natale admits that he met with George White and Alexander in September of 1983 and that he drew up a contract for them. *See* Affidavit of Herman & Natale dated July 5, 1984, at paragraphs 4, 7 and 8; Affidavit of Herman & Natale in support of its motion for summary judgment dated June 14, 1984, at paragraph 15.

Additionally, Herman & Natale assert that the complaints of fraudulent concealment against it by the Trustee and Alexander are defective because the element of intent was not alleged by either of the complainants. This contention is simply false. Both the Trustee's amended complaint (at paragraph 7) and Alexander's cross-claim (at paragraph 11) specifically allege that Herman & Natale intentionally concealed information with the aim of perpetrating fraud.

In addition to the arguments of Herman & Natale discussed above, the court has considered its other arguments but does not believe that they warrant discussion. It suffices to say that a more detailed factual context is essential to properly rule on the serious claims before the court.

## THE DISCOVERY MOTION

■ Pursuant to Bankruptcy Rule 7037(d) and Rule 37(d) of the Federal Rules of Civil Procedure, the Trustee has moved for the court to impose sanctions on Herman & Natale for its alleged abuse of the discovery process. Herman & Natale has denied any wrongdoing and has made a cross-motion requesting that sanctions be imposed against the Trustee for her alleged abuse of the discovery process.

On April 4, 1984, counsel for the Trustee, John Westerman, served Herman & Natale and Robert Alexander a Notice of Examination. On May 7, 1984, Herman & Natale served a Cross Notice of Examination. In its Cross Notice of Examination, Herman & Natale stated that it desired to take "the deposition upon oral examination of Dorothy Eisenberg, ... or an officer or party who is familiar with the Trustee's affairs and with their [sic] dealings with said estate."

The parties held the deposition at the Trustee's office on June 8, 1984. Natale appeared on behalf of the defendant law firm. Westerman informed Natale that the Trustee was not available for examination. Instead of Eisenberg, Westerman said that Jesse I. Levine, a partner of the law firm retained to represent Eisenberg in this matter, and an individual familiar with the Trustee's affairs and dealings with the debtors' estate, would testify in accordance with Herman & Natale's Cross Notice of Examination [1]. Natale contends that Westerman rudely refused, without basis, to let him enter his objections to Eisenberg's nonappearance in the record. Westerman contends that he stated that no statements should be made until co-defendant Alexander's attorney was present.

According to the affidavits of Westerman, Alexander and Henry Hochberg, the stenographer at the examination, after Westerman temporarily excused himself from the room, Natale entered an objection to Westerman's conduct on the record, and then left before Westerman returned. Subsequently, Alexander's attorney appeared and Alexander was deposed by Westerman.

After noting his objections for the record, Mr. Natale had no excuse to leave the examination. Natale's permissible course of conduct was to note his objection for the record as he did, and to proceed with the examination.

Natale contends that the transcript does not contain all of the dialogue that transpired between Westerman and Natale and thus it is not an accurate reflection of the

1. Westerman, Eisenberg and Levine are all members of the law firm Shaw, Goldman, Lici- tra, Levine & Weinberg, P.C.

events that took place. Natale asserts that Westerman ordered the stenographer not to take Natale's and Westerman's statements for the record. Even if Natale's version of the facts were true, it still would not have been proper for him to walk out on the examination without being deposed. By reason of his own Cross Notice of Examination, Natale's objection to the absence of Mrs. Eisenberg herself was baseless. Moreover, the parties stipulated at the deposition that the failure to object to any question or to move to strike any testimony would not constitute a waiver to such an objection. If counsel's objections were not recorded to his satisfaction at the deposition, he could have raised his objections at trial, or brought them to the court's attention by motion. Finally, if Natale actually felt that Westerman's conduct was abusive, under the circumstances as alleged by Natale, his remedy was limited to a proceeding under Bankruptcy Rule 7030(d) and Federal Rules of Civil Procedure 30(d).[2] The kind of self-help remedy used by Natale has no place in the effective system of discovery that the Federal courts strive to maintain.

Pursuant to Bankruptcy Rule 7037(d) and Rule 37(d) of the Federal Rules of Civil Procedure, plaintiff urges the court to:

 1. hold the defendant in contempt of court;

 2. establish as facts the allegations brought by the plaintiff against the defendant;

 3. prohibit the defendant from introducing designated matters into evidence;

 4. strike the answer and counterclaim of the defendant;

 5. render a judgment of default against the defendant; and

 6. award plaintiff's counsel reasonable attorney fees for the costs incurred in bringing this motion.

The entry of a default judgment acts as a final disposition of litigation. The striking of pleadings and evidence often has the same practical effect. These sanctions deprive a litigant of a full and fair hearing of his case and therefore raise serious constitutional considerations. "The provisions of Rule 7 which are here involved must be read in light of the provisions of the 5th Amendment that no person shall be deprived of property without due process of law...." *Societe Internationale, Etc. v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). *See Harding v. Federal Reserve Bank of New York*, 707 F.2d 46, 50 (2d Cir.1983). This court does not feel that Herman & Natale's actions merit these extreme sanctions.

Attorney fees, similarly, should not be assessed lightly. The Second Circuit has advised, however, "that the court keep in mind the possibility, in future cases of inexcusable neglect by counsel, of imposing substantial costs and attorney's fees payable by offending counsel personally to the opposing party, as an alternative to the drastic remedy of dismissal." *Schwarz v. United States*, 384 F.2d 833, 836 (2d Cir. 1967). The Court feels that attorney fees are an appropriate sanction to impose on Herman & Natale for its improper conduct. Herman & Natale has requested that the court order the production of Dorothy Eisenberg for deposition. Considering the gravity of the charges against Herman & Natale, the court finds it proper that it be allowed to depose Dorothy Eisenberg. In view of Natale's conduct at the previous deposition, however, the court orders that as a prerequisite to deposing Dorothy Eisenberg, Herman & Natale must first pay Dorothy Eisenberg the sum of $350.00 toward the cost of attorney fees in bringing this motion, and the costs of producing Levine at the original deposition.

---

**2.** Bankruptcy Rule 7030(d) and Rule 30(d) of the Federal Rules of Civil Procedure provide that upon a showing that an examination "is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass or oppress the deponent or party, the court ... may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). ... the provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion."

Co-defendant Alexander has complained that if he is forced to attend another deposition because of Herman & Natale's violation of the discovery process, he will unnecessarily lose income and incur attorney expenses. Therefore, the court orders that as a prerequisite to Alexander's further deposition by Herman & Natale, Herman & Natale must first reimburse Alexander the sum of $350.00 toward attorney's fees and costs of attending the original deposition.

So Ordered.