16 F.3d 482
 28 Fed.R.Serv.3d 921
 Mircela NITA, Plaintiff-Appellant,
v.
CONNECTICUT DEPT. OF ENVIRONMENTAL PROTECTION, Sean
Dautrich, Kristen Morehouse Lane, John J. Johnston,
Christopher McWilliams, Kirk U. Kaiser, Brian J. Heavren,
Christopher Brindisi, Robert Brown, Defendants-Appellees.
 No. 709, Docket 92-9168.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 2, 1993.
Decided Feb. 7, 1994.
 
 Robin A. Henry, New York, New York (Mitchell A. Lowenthal, Cleary, Gottlieb, Steen & Hamilton, New York, New York, on the brief), for Plaintiff-Appellant.
 Robert B. Teitelman, Assistant Attorney General, Hartford, Connecticut (Richard Blumenthal, Attorney General of the State of Connecticut, Hartford, Connecticut, on the brief), for Defendants-Appellees.
 Before: LUMBARD, KEARSE, and JACOBS, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Mircela Nita appeals from a final judgment of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, Judge, dismissing her complaint against defendants Connecticut Department of Environmental Protection ("Department") and eight of its officers, asserting federal constitutional claims pursuant to 42 U.S.C. Sec. 1983 (1988) and claims under state law. The district court dismissed the complaint sua sponte for failure to prosecute and denied Nita's motions to set aside the dismissal. On appeal, Nita contends that the court abused its discretion by, inter alia, dismissing the case without prior warning, holding Nita to unannounced deadlines, and failing to consider imposing a less severe sanction. For the reasons below, we agree, and we vacate the dismissal and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 According to the complaint, the present controversy arises out of the following events. On July 2, 1989, Nita, a New York resident, was a passenger in a car driven by her ex-husband in Connecticut's Hammonasset State Park. Defendants Sean Dautrich, Kristen Morehouse Lane, and Kirk U. Kaiser, officers of the Department, stopped the car. When Nita asked why the car was being stopped and sought to write down the officers' badge numbers, Dautrich struck Nita with his handcuffs, Lane twisted Nita's hand, and Kaiser physically assaulted Nita's ex-husband. After a struggle, Nita was handcuffed, arrested, and placed in a patrol car, where Lane and Dautrich inflicted further pain by pulling Nita's handcuffed arms behind her and above her head. The other officer defendants were present during the altercation; though they did not participate in it, they did not attempt to stop their fellow officers. Nita subsequently obtained medical care for her hand and psychiatric care for posttraumatic stress disorder.
 
 
 3
 A. The Early Proceedings and the Rule 12(b)(6) Dismissals
 
 
 4
 Proceeding pro se, Nita commenced the present Sec. 1983 action on June 5, 1991, against the Department and the eight officers in both their individual and their official capacities, alleging that the officers' actions deprived her of her constitutional rights to freedom of expression and to be free from the use of excessive force; she also asserted state-law claims for assault and battery, unlawful arrest, conspiracy, malicious prosecution, false arrest, false imprisonment, negligent and intentional infliction of emotional distress, and negligence in the performance of police duties. Nita's first request for the appointment of pro bono counsel to represent her was denied without prejudice on June 24, 1991, on the ground that there was an insufficient basis on which to evaluate the merits of the complaint. A renewed request was denied for similar reasons in August 1991.
 
 
 5
 All of the defendants moved in June 1991 pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5), and (6) for dismissal of the claims against them in their official capacities, asserting lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim on which relief could be granted. Shortly thereafter, defendants Lane, Kaiser, John J. Johnston, Brian J. Heavren, and Robert Brown (the "Lane defendants") also moved pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for dismissal of the action against them in their individual capacities.
 
 
 6
 On August 6, 1991, the district court granted all defendants' motions to dismiss the claims asserted against them in their official capacities. On August 23, the court granted Nita's motion for a default judgment against defendants Dautrich, Christopher McWilliams, and Christopher Brindisi (the "Dautrich defendants") in their individual capacities, based on their failures to respond to or move against the complaint. On August 29, the Dautrich defendants moved pursuant to Fed.R.Civ.P. 55(c) to set aside the default on the ground that they had not been properly served with process, and they moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5), and (6).
 
 
 7
 In a Ruling on Pending Motions dated March 16, 1992 ("March 16 Ruling"), the court granted the Dautrich defendants' motions to set aside the default and ordered the United States Marshal to re-serve the complaint on them. The court also struck those defendants' motions to dismiss the claims asserted against them in their individual capacities, without prejudice, because the motions had been filed while those defendants were technically in default and were not properly before the court.
 
 
 8
 As to the Lane defendants, the court ruled on the merits of their motions to dismiss the claims asserted against them in their individual capacities. The court refused to dismiss Nita's excessive force claims against any defendant; it dismissed the First Amendment claims except that asserted against Lane; and it dismissed all of the state-law claims except those for assault and battery asserted against Lane, Johnston, and Brown.
 
 
 9
 B. The Stay, the New Motions, and the Appointment of Counsel
 
 
 10
 Having concluded that the First Amendment claim against Lane, the assault and battery claims against Lane, Johnston, and Brown, and the excessive force claim against all of the Lane defendants had potential merit, the court ordered that pro bono counsel be appointed to represent Nita. The court directed that all further proceedings in the action be stayed "for thirty days or until pro bono counsel is appointed." March 16 Ruling at 22.
 
 
 11
 In April 1992, the Dautrich defendants made a number of motions to dismiss (collectively the "April motions"). First, on April 14, because the original complaint had been re-served on them pursuant to the court's March 16 Ruling, the Dautrich defendants moved again to dismiss the claims against them in their official capacities, notwithstanding the August 1991 dismissals of such claims against all defendants. A week later, Brindisi moved to dismiss all claims against him in his individual capacity except the excessive force claim; thereafter, Dautrich moved to dismiss all claims against him in his individual capacity except the excessive force, assault and battery, and First Amendment claims. The Lane defendants answered the complaint and made no further motions. McWilliams neither answered the complaint nor made any motion to dismiss any of the claims asserted against him in his individual capacity.
 
 
 12
 On May 5, 1992, the court entered an order appointing Robert Recio as Nita's pro bono counsel. Recio filed a notice of appearance on June 1. In the meantime, according to an affidavit filed by Nita in the district court, Nita met with Recio on May 11, gave him the relevant documents in her possession, and requested that he respond to the April motions of Dautrich and Brindisi.
 
 
 13
 On June 8, all defendants except McWilliams moved to extend the pretrial deadlines previously set by the court's standard-form scheduling order, and they requested a temporary moratorium on discovery. They also asked the court to direct plaintiff's newly appointed attorney to file a new complaint in September. In an endorsed order dated June 10, 1992 ("June 10 Order"), the district court granted the motion only to the extent of extending the discovery deadline to July 16. The order stated as follows:
 
 
 14
 Defendants are advised at the outset that the pendency of their motions to dismiss has not worked and will not work a stay of the running of the discovery period in this case. However, in view of the particular circumstances of this case, in particular, Mr. Recio's recent appointment as counsel to Ms. Nita, defendants' motion is GRANTED in part such that the discovery period is hereby extended to July 16, 1992 and the deadline for filing dispositive motions also extended [sic ] to August 17, 1992. Defendants' request that plaintiff's counsel be required to file a revised complaint is DENIED without prejudice to renewal at such time as the Court has ruled on the pending motions to dismiss.
 
 
 15
 On July 1, 1992, defendants commenced the deposition of Nita and her ex-husband. According to her affidavit, on that morning Nita again asked Recio about the April motions, and he assured her that they would be dealt with in a timely manner. On July 14, Nita found out by happenstance that her deposition was scheduled to continue on July 16. On the following day, she informed Recio that she would be unable to attend the deposition because her medication prevented her from driving. On July 16, Recio called Nita and told her he would not continue as her attorney. He filed a formal motion to withdraw on July 22.
 
 C. The Sua Sponte Dismissal
 
 16
 On July 16, 1992, the district court sua sponte dismissed the action in its entirety. The court's order read as follows:In spite of the importunings of chambers, plaintiff has failed to file either responses to the numerous pending motions in this case or motions for extensions of time in which to file such responses. Accordingly, this action is hereby reluctantly ORDERED dismissed without prejudice.
 
 
 17
 Order dated July 16, 1992 ("July 16 Order").
 
 
 18
 Meanwhile, Nita, according to her affidavit, did not discover until July 14, and then only through her own personal efforts, that Recio had not responded to the April motions. On July 20, as yet unaware of the court's July 16 Order dismissing her action, Nita filed motions pro se for default against McWilliams, for an extension of the discovery deadline, and for a protective order with respect to the continuation of her deposition. After learning of the July 16 dismissal, Nita filed pro se motions on July 22 and August 17 to set aside the order dismissing her action. She pointed out that since the court had appointed counsel to represent her, she was not entitled to file responses to the pending motions pro se and that she had done all she could to urge Recio to respond to the motions. The motions to vacate the dismissal were denied in an endorsed ruling dated August 25, citing "the absence of an adequate showing under Federal Rule of Civil Procedure 60(b)."
 
 
 19
 On August 26, Recio filed a similar motion on Nita's behalf, requesting that the court set aside its dismissal order and representing that he and defendants' attorney had informally agreed that the case would be stayed until approximately September 7. Defendants opposed the motion, stating that whatever stay agreement they had reached with Recio had been superseded by the court's June 10 Order, and that the dismissal had been warranted by Nita's failure to submit to discovery and her repetitive and baseless motion practice. The court endorsed a ruling dated September 3, denying Nita's motion "[i]n the absence of an adequate demonstration of mistake, inadvertence, surprise or excusable neglect" and for "fail[ure] to comply with local rule 9(a)(1) [motion required to be accompanied by memorandum of law]." Finally, Nita filed a September 22 motion to set aside the order based on "extraordinary circumstances recently discovered." The court treated this as a motion for reconsideration, which it granted; upon reconsideration, the court adhered to its previous decision denying the motion to set aside the order.
 
 
 20
 This Court appointed counsel to represent Nita on this appeal.
 
 II. DISCUSSION
 
 21
 It is well established that a district court has the power to dismiss an action for failure to prosecute and that such a dismissal will be reviewed only for abuse of discretion. See, e.g., Link v. Wabash Railroad Co., 370 U.S. 626, 632-33, 82 S.Ct. 1386, 1389-90, 8 L.Ed.2d 734 (1962); Peart v. City of New York, 992 F.2d 458, 461 (2d Cir.1993); Alvarez v. Simmons Market Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir.1988); Harding v. Federal Reserve Bank, 707 F.2d 46, 50 (2d Cir.1983); Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42-43 (2d Cir.1982). In determining whether there has been such an abuse of discretion, we examine principally
 
 
 22
 " the duration of the plaintiff's failures, whether plaintiff had received notice that further delays would result in dismissal, whether the defendant is likely to be prejudiced by further delay, whether the district judge has 'take[n] care to "strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard...." ', and whether the judge has adequately assessed the efficacy of lesser sanctions."
 
 
 23
 Alvarez v. Simmons Market Research Bureau, Inc., 839 F.2d at 932 (brackets in original) (quoting Harding v. Federal Reserve Bank, 707 F.2d at 50 (quoting Merker v. Rice, 649 F.2d 171, 174 (2d Cir.1981))); see also Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir.1993); Peart v. City of New York, 992 F.2d at 461; Romandette v. Weetabix Co., 807 F.2d 309, 312 (2d Cir.1986). Generally, no one factor is dispositive.
 
 
 24
 In the present case, each factor suggests that the dismissal was an abuse of discretion. First, the duration of Nita's failures is not certain, but certainly was not long. To begin with, it is unclear precisely when she was first in default because it was unclear when the court-ordered stay of proceedings ended. In its March 16 Ruling, the district court had stayed proceedings "for thirty days or until pro bono counsel is appointed." If a party were required to retain counsel we would likely infer, absent greater specificity, that the court's order was intended to stay matters for 30 days or until retention of counsel, whichever was earlier; however, where the party herself is not required to take action and the court is to appoint pro bono counsel we infer that the order must have meant to stay matters for 30 days or until appointment by the court, whichever was later. We think it inconceivable that the court meant to stay proceedings and appoint counsel for Nita but to have the stay expire weeks before the appointment was made.
 
 
 25
 As it turned out, the court did not appoint counsel for Nita until May 5. The motions to which Nita did not respond were filed in April and therefore, in our view, violated the stay. The court would have been well within its authority to deem those motions a nullity; if the court chose to treat them as having been filed on the date that counsel was appointed, it would have been appropriate to announce that ruling in order to clarify the deadline for responses to those motions. In any event, assuming that the motions were treated sub silentio as having been filed on May 5, the date of the appointment of counsel, the 21-day period allowed by the local rules for Nita to respond to the motions would not have expired until May 26. Thus, at worst, Nita was less than two months in default in responding to defendants' motions when the court dismissed her action on July 16.
 
 
 26
 Second, the record does not contain any notice from the court to Nita that her case was on the brink of dismissal if she failed to respond to the April motions. Although the July 16 Order stated that Nita had failed to respond "[i]n spite of the importunings of chambers," the court did not explain, either in that order or in its later denials of Nita's motions to vacate, to what it was referring by "the importunings"; and the record does not reveal any precatory, admonitory, or decretal communications on the subject of Nita's responding to the pending motions. The only document issued by the court between March 16 and July 16, other than the May 5 order appointing counsel and an earlier endorsed order denying a March 9 discovery motion by Nita, was the June 10 Order dealing with scheduling. The June 10 Order referred to the pending motions to dismiss; but, assuming those motions were deemed permissibly filed as of the date Recio was appointed, Nita would already have been two weeks in default in responding to them at the time of the June 10 Order. Yet that order, which denied defendants' motion to compel Nita to file a revised complaint "without prejudice" to renewal after "the Court has ruled on the pending motions to dismiss," gave no indication that the court viewed Nita as being in default. Nita maintains that she received no communications from the court with respect to the pending motions. And on being questioned by this Court at the oral argument of this appeal, counsel for defendants stated that he had no knowledge of any such communications. We see no record of any communications to which the court may have been referring, and we are unable to conclude that the court gave Nita notice.
 
 
 27
 Third, the record does not indicate that defendants would have been prejudiced by delay of matters beyond July 16. Defendants themselves had sought in June to delay matters until September. Further, though defendants seek to vindicate the court's dismissal by arguing that Nita had filed numerous baseless motions and had dallied in submitting to discovery, those grounds were not relied on by the court. Indeed, in its March 16 Ruling, the court had stated that "plaintiff's submissions to date have been procedurally adequate and cogently presented."
 
 
 28
 Finally, we see no indication that the district court balanced its interest in calendar management against Nita's interest in vindicating her rights or that it considered imposing lesser sanctions. For several reasons it is difficult to conclude that such a balancing would not have dissuaded the court from dismissing the action. First, one of the pending April motions--that brought by all three Dautrich defendants--was a motion for dismissal of the claims asserted against them in their official capacities, brought despite the fact that the court had already dismissed those claims against all defendants in August 1991. Any judicial inconvenience from the continued pendency of this motion does not seem properly attributable to Nita. Second, even the motions that were addressed to claims against defendants in their individual capacities sought dismissal of fewer than all of Nita's remaining claims. Thus, Brindisi did not move to dismiss the claim against him for use of excessive force; Dautrich did not move to dismiss the claims against him for use of excessive force, assault and battery, or violation of Nita's First Amendment rights; and McWilliams did not move to dismiss any of the claims against him in his individual capacity. Further, the court had already denied in large part the dismissal motions of the Lane defendants, and those defendants had no motions pending.
 
 
 29
 If Nita's failure to respond to the pending April motions caused an unacceptable state of suspense, it is difficult to comprehend why the court's interest in resolving those matters would not have been served simply by deeming Nita to have defaulted on those motions. Surely in light of the court's evaluation that some of Nita's asserted claims had sufficient substance to warrant the appointment of counsel to represent her, it would seem that her due process right to proceed would have best been served by allowing her to proceed at least on the claims to which no pending motions were addressed.
 
 
 30
 In sum, though the court two months earlier had appointed counsel to prosecute claims that it felt should not be dismissed, and though defendants had just requested a delay of the proceedings, the court, having given Nita no warning that we can find in the record and citing only her failure to respond to the pending motions, dismissed not just the claims to which those motions were addressed but also (a) the previously upheld claims asserted against five defendants who had no motions pending, (b) claims against two defendants whose motions to dismiss were explicitly addressed only to other claims, and (c) all claims against one defendant who had neither moved against nor answered the complaint and thus was apparently in default. In all the circumstances, we conclude that the July 16 Order dismissing the complaint was an abuse of discretion.
 
 CONCLUSION
 
 31
 We have considered all of defendants' arguments in support of the district court's judgment and have found them to be without merit. The judgment dismissing the complaint is vacated, and the matter is remanded for further proceedings not inconsistent with the foregoing. We suggest that counsel for Nita be appointed or continued in the district court.