### NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY, Plaintiff,

v.

### NUCLEAR FUEL SERVICES, INC.; Getty Oil Company; Commonwealth Edison Company; General Public Utilities Corp.; General Public Utilities Service Corporation; Jersey Central Power & Light Co. and Wisconsin Electric Power Company, Defendants.

No. CIV–82–426.

United States District Court, W.D. New York.

April 25, 1983.

See also, D.C., 561 F.Supp. 954.

Robert A. Cantor, Washington, D.C., Philip H. Gitlen, Albany, N.Y., for plaintiff.

John F. Canale, Buffalo, N.Y., for General Elec. Co.

Jack McKay, Washington, D.C., for Wisc. Elec. Power Co.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff in this action involving issues of liability for the removal of and the cost or value of the storage of high radioactivity level nuclear fuel wastes now stored at plaintiff's facility in West Valley, N.Y.[1]

---

[1] The history and circumstances of this litigation are amply set forth in my recent decision on plaintiff's motion for partial summary judgment and defendants' opposing motions, entered April 8, 1983, 561 F.Supp. 954 (W.D. N.Y.1983).

have served a non-party, General Electric Company, with a subpoena duces tecum intended to discover information pertinent to the value of such storage to the utility company defendants. General Electric has moved to quash such subpoena and plaintiff has cross-moved to compel compliance therewith. The subpoena seeks disclosure of information related to the operation of General Electric's Morris, Ill. facility for storing nuclear wastes and requests the production of three categories of "documents," which noun is defined as:

"all originals, drafts, and non-identical copies of any correspondence, worksheets, memoranda, decisions, testimony, exhibits, reports, schedules, graphs, tabulations, or any other written, printed, typed, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, [including] any information stored in or accessible through computer or other information stored in or accessible through computer or other information storage or retrieval systems, together with all codes, programming instructions, and other materials necessary to understand and use such systems."

The three categories are

"[a]ll invoices, bills or similar documents rendered by General Electric for the storage of spent fuel at the Morris Operation[,] [a]ll documents that explain or provide the basis for the charges made by General Electric for the storage of spent fuel at the Morris Operation, or if there are no such documents, all documents which were used to compute such charges[,] [and a]ll contracts, agreements and memoranda of understanding between General Electric and any utility pertaining to the storage at the Morris Operation of such utility's spent fuel."

General Electric moves to quash the subpoena pursuant to Fed.R.Civ.P. rule 45(b)(1) as unreasonable and oppressive and, under rules 45(d)(1) and 26(b) and 26(c), as directed at material that is irrelevant to this litigation and/or is entitled to protection as confidential business information, all tenable grounds for opposing enforcement of a third-party subpoena duces tecum. As to unreasonableness and oppressiveness, General Electric contends that the great breadth of plaintiff's production demand would require an extremely burdensome search of every file that might conceivably contain items within the broad terms of the subpoena demand, in six offices around the country. It is contended that the requested items are irrelevant to this action (a contention which bears upon the burdensomeness and unreasonableness of the subpoena, to the extent that it is well-founded) because General Electric is not in the business of storing nuclear fuel wastes at the Morris facility. The operation at Morris is said to have encountered unspecified difficulties, resulting in a number of complex lawsuits and disputes with utility companies with whom General Electric had had contracts to reprocess nuclear fuel wastes. It is urged that with one exception all of General Electric's current contracts for fuel storage at Morris were made in settlement of these controversies. The exception involved an agreement to store a small amount of wastes for two years, to avoid an immediate shutdown of the storer's nuclear power plant. The desire to avoid costly plant shutdowns is said to have been involved in a number of negotiations for storage. General Electric thus urges that each contract for storage was a product of unique circumstances and involves unique terms which could have no logical relevance to plaintiff's interest in establishing the reasonable value of fuel storage to defendants. Further, if General Electric's charges for storage services are to any degree relevant to the value of plaintiff's similar services, nonetheless the items pertaining to General Electric's basis for the charges, involving General Electric's costs and profit margin, are not relevant to this issue. Plaintiff's own costs are determinable only by plaintiff from materials to which plaintiff has ready access, and General Electric's profit margin has no bearing upon what plaintiff's profit margin ought to be.

The claim of confidentiality in the subpoenaed material has several parts. Most of the existing contracts are soon due to expire and be renegotiated; disclosure to its customers of General Electric's charges to other customers, and the cost bases of such charges, would give customers an unfair bargaining advantage, particularly in that most of the customers have the option of storing their fuel wastes at their own storage facilities. General Electric claims that, although it is not now accepting new business for its Morris facility, it may do so in the future and, if its present terms of storage and the cost bases therefor became known to potential competitors (of whom there assertedly exist a number), they would receive an unfair business advantage over General Electric. Finally, it is claimed that disclosure of the bases of General Electric's fuel waste storage charges "could provide clues to the company's pricing bases in related nuclear businesses, such as the sale of new fuel or performance of services, in which there is stiff competition for hundreds of millions of dollars of business each year," resulting in unfair prejudice to General Electric in such competition (Van Hoomisen Affidavit 3–4).

General Electric urges that, if the subpoenaed material is found to be relevant to the issue of plaintiff's damages, enforcement be delayed until my decision on plaintiff's motion for partial summary judgment clarifies plaintiff's entitlement to damages and the measure thereof and that the materials to be disclosed be covered by an appropriate protective order. In my April 8th decision on plaintiff's summary judgment motion, I held that the utility defendants are presently liable to plaintiff under unjust enrichment principles for their use of plaintiff's property to store their wastes, at least from February 25, 1982 to date, and would thereafter possibly be held liable for trespass by such use, if and when plaintiff unequivocally demands that the utility companies remove their wastes. The measure of compensatory damages under either theory, unjust enrichment or trespass, I held to be essentially the same—to wit, the value to the utility companies of such storage, as determined by the value to the defendants of the services received or by what the court finds would have been the agreement of the parties had the storage been bargained for. Memorandum and Order, at 64–65.

 It is clear that, as noted above, relevance of the subpoenaed information has an important bearing upon the determination of a claim that a subpoena duces tecum is unreasonable or oppressive, as well as to a claim of confidentiality for the material sought to be produced, and that a sufficient showing of need for the information will suffice to overcome such objections—albeit compliance with the subpoena may be subjected to protective orders or conditioned upon payment of expenses by the party seeking disclosure. *See, e.g., Centurion Industries, Inc. v. Warren Steurer,* 665 F.2d 323, 325 (10th Cir.1981); *Covey Oil Company v. Continental Oil Company,* 340 F.2d 993, 997–999 (10th Cir.1965); *Citicorp v. Interbank Card Ass'n,* 87 F.R.D. 43, 47 (S.D.N.Y.1980); *United States v. Intern. Bus. Mach. Corp.,* 83 F.R.D. 97, 104–109 (S.D.N.Y.1979). The test of relevance under Fed.R.Civ.P. rule 26(b), incorporated by reference in Fed.R.Civ.P. rule 45(d)(1), is stated as "relevant to the subject matter involved in the pending action," and includes even inadmissible matter "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The phrase "relevant to the subject matter involved in the pending action," while broad in itself, is confined to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any *issue that is or may be in the case.*" *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (emphasis added). Thus the test of relevance stated in Fed.R.Ev. rule 401—" '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"—must be brought to bear on a determination of objections to a

subpoena duces tecum based on burdensomeness and confidentiality of the items of information sought, along with other factors bearing on the requesting party's need for such items.

■ Plaintiff seeks to demonstrate both relevancy of and need for the subpoenaed items by the assertion that the Morris facility is the only operative high-level nuclear waste storage facility in the country, other than plaintiff's own facility; thus material revealing the cost to General Electric and charges to General Electric's customers for storage there constitutes the only available source of evidence pertaining to the "market value" of such storage services. An undaunted acceptance of this assertion would set loose several troublous considerations.

It has become practically the premise in this litigation that as a matter of fact there presently exists no market in this country for the storage of high-level radioactive wastes from nuclear power generating facilities—a situation indeed of grave public importance which has drawn the attention of press, public and government increasingly in recent years. Those facilities that did formerly accept the deposit of such wastes, such as the Morris facility and plaintiff's own facility at West Valley when it was actively operated by Nuclear Fuel Services, Inc., did so in connection with agreements to reprocess such wastes—*i.e.*, to salvage that which was usable and dispose of the remnant. Agreements that were made under these conditions have no conceivable relevance to the value to utility companies of storage without expectation of reprocessing, the situation at West Valley during all times herein pertinent. It is obvious that the storage portion of such agreements is ancillary to the reprocessing portion; indeed, in those agreements of this type which have become of record in this litigation, the charges for storage are agreed to be credited against the charges for repro-

cessing. *See, e.g.,* Exhibits to Affidavit of Bernard H. Cherry dated July 7, 1982, Exhibit 3, p. 20. Thus the instant subpoena is facially overbroad and burdensome to the extent that it seeks information pertinent to such transactions, which are not of the same character as the putative transaction which the court must define if and when required to set damages on plaintiff's unjust enrichment and trespass claims.

The case is somewhat different as to storage agreements made in settlement of litigation and contract disputes arising after the Morris reprocessing operation foundered.[2] These agreements also are, so to speak, tainted in that they did not result from arm's length negotiations between substantially unconstrained parties, as should be the character of the putative transactions the terms of which are the issue in regard to plaintiff's damages. More importantly, however, both this class of agreements and the single "arm's length" agreement (which was assertedly affected by the utility customer's dire need) can have only marginal probative value for this case because of the absence of any market pressures on their making. It is presumable that the presence of even one competitor in the market for long-term storage, sans reprocessing, of spent nuclear fuels would have affected the price exacted by General Electric for such services at the Morris facility—assuming that General Electric would not have preferred to decline all such business entirely during the period in question, were other storage areas available for the demand. Plaintiff admits that "competitive pricing does not exist" in this field. The Morris agreements cannot possibly therefore reflect a "market price" for storage services, as nothing of the sort exists. If the prices of the storage agreements had not been depressed by General Electric's desire to satisfy its customers' claims against it, then the expectation is that the prices would have been maximized by the lack of competition for storage cus-

2. Contrary to plaintiff's assertion, the Morris-related agreements in this category are not the only contracts of this nature the terms of which are available to plaintiff, for the terms, includ- ing storage charges, of similar agreements between Nuclear Fuel Services, Inc. and the utility company defendants are items of record in this case.

tomers. In the former case the prices will not provide a measure of a recovery fair to plaintiff; in the latter, such prices will be indicative of a fair recovery only if it should be found that plaintiff is entitled to the advantage of a totally monopolistic market position—a point which I am disinclined to decide without development of the damage issues by the parties, but which appears untenable at first blush. One authority unearthed with a modicum of effort has held that in an action for the quantum meruit value of services, the "necessities" of the defendant were not a proper subject for consideration by the jury in determining damages. *Old Dominion Transp. Co. v. Hamilton,* 146 Va. 594, 131 S.E. 850, 852–853 (1926). The equitable considerations underlying this holding would seem appropriate in application to plaintiff's claim for damages for unjust enrichment, and for trespass, should the trespass theory of recovery become applicable herein. In view of the many decisions suggesting that the proper measure of damages is the market cost of the services received (a view implicit in plaintiff's effort to discover data relating to the Morris facility, which plaintiff characterizes as "market value" data) and in view of the absence of any true market in this case, I think that recovery should be based upon the reasonable costs to plaintiff[3] of rendering the services received by defendants, plus a margin of profit comparable to that obtaining in similar or related industries during the relevant period.

Notwithstanding the foregoing considerations, in view of the modern breadth of discovery obtainable under rule 26, which here applies, I will require General Electric to comply with that portion of the subpoena which seeks the originals or attested copies of final agreements for storage of spent fuel at the Morris facility which are unrelated to any reprocessing agreement, if upon *in camera* inspection by myself a significant number of such agreements reveal a substantial degree of commensurability among the storage charges recited therein. Only such agreements having such level of commensurability may conceivably constitute market value data and thus bear on the damage issues in this case; other, incommensurable agreements are not discoverable under Fed.R.Civ.P. rules 45(d)(1) and 26(b). Should disclosure of any such commensurable agreements ultimately be ordered (with appropriate protection), the parties will of course thereafter be able to attack or support the probative value of such as they see fit.

As to documents and other informational items pertinent to the bases of charges for storage at the Morris facility, such matters are presently held to be irrelevant to the reasonable value of plaintiff's services to defendants. This holding is without prejudice to a renewed request for disclosure of such items, based on a showing of need therefor, including argument supported by authority for the proposition that plaintiff is entitled to receive a percentage of profit comparable to that obtained through the

---

**3.** I should note that by "costs to plaintiff" I mean overhead costs in general, including normal considerations pertaining to the cost of constructing the storage facility. Although the direct cost of construction was apparently borne by Nuclear Fuel Services, Inc., it was agreed from the beginning that the storage facility was to become plaintiff's property upon termination of Nuclear Fuel Service, Inc.'s lease of the premises, so it may be assumed that sufficient consideration was given for such construction. No reason suggests itself why the utility defendants ought to receive a waste storage windfall due to the mere fortuity that the owner of the West Valley facility did not also construct it.

The cost portion of General Electric's Morris facility contracts (which, it has come out on a second motion by plaintiff to compel decided herewith, are "cost-based") arguably has at least minimal relevance to the appropriate cost portion of plaintiff's damages entitlement—although to be sure an attempt to base the latter on the former would be met with myriad objections substantial and niggling that the two facilities involved are wholly different entities in all material respects. Plaintiff has no need to discover information pertinent to General Electric's Morris facility costs pressing enough to justify the heavy burden and the commercial intrusion of its subpoena demand. Plaintiff's proper costs may be and should be determined by expert analysis, based upon accepted business principles, of data pertinent to the West Valley operation alone.

disclosed Morris-related agreements (should any be disclosed), or is otherwise in need of such information. In urging enforcement of the subpoena, plaintiff has made no real explanation of its desire for information pertaining to the basis for and to negotiation of agreements for storage of the Morris facility.

■ Pending the preparation of this Memorandum and Order, plaintiff moved to compel an officer or employee of defendant Wisconsin Electric Power Company, the only utility company defendant having fuel stored at the Morris facility, to answer deposition questions pertinent to the terms of such storage and other related matters. Wisconsin Electric opposes such motion, urging General Electric's asserted interest in confidentiality, and questioning the relevance to this litigation of the information sought for several reasons not presently necessary to expound.

The only colorable claim of relevance advanced in plaintiff's brief and in oral argument (other than arguments considered above in regard to the subpoena of General Electric's documents) is that the charges paid by Wisconsin Electric for storage at the Morris facility indicate at least the minimum value of such to Wisconsin Electric, although the full value may be greater. Wisconsin Electric responds to this contention that the Morris charges are in fact in its view excessive, for which reason Wisconsin Electric is presently undertaking to retrieve its fuel wastes for storage at its own reactor-based facility.

There must be uniformity as to all three utility defendants in any award for storage benefits received. Plaintiff's burden of proving that charges paid by Wisconsin Electric for storage at Morris have any bearing upon what the other utility parties reasonably would have paid—at a minimum—for such storage would be monumental indeed; attempting to meet it would complicate this litigation greatly and unnecessarily. The issue is not what Wisconsin Electric reasonably would have paid for storage, but what all the utility defendants reasonably would have paid had the situa-

tion been anticipated and provided for. The Wisconsin Electric agreement with General Electric for storage at the Morris facility should not be considered logically relevant thereto unless other similar agreements between utility companies and General Electric suggest by their terms that a somewhat uniform storage fee was charged in a significant number of Morris facility storage agreements, in which case some relevance to the value of such storage to the utility industry will arguably have been demonstrated.

Plaintiff's argument that examination of a Wisconsin Electric representative would yield information regarding what Wisconsin Electric regards as properly includable costs for cost-based storage agreements does not derogate from what has been said, which fully applies to such argument. Under my holding stated in footnote 3, supra, that plaintiff has not shown sufficient need to discover General Electric's Morris facility costs, plaintiff may not establish that what Wisconsin Electric conceded in bargaining were proper amounts for the cost base of its Morris agreements has any pertinence to what the other utility defendants would so concede.

In accord with the foregoing, General Electric Company is hereby ORDERED to submit under seal to the court attested copies of all final agreements pertaining to storage of nuclear fuel wastes at the Morris facility, which are not ancillary to an agreement to reprocess the fuel stored, within twenty (20) days of the entry of this Order. Should such agreements contain disparate technical terminology descriptive of the amounts and kinds of fuel stored, such submission shall be accompanied by an affidavit of a person in the employ of General Electric Company which will assist the court in comparing the charges for spent fuel storage. Except as herein indicated plaintiff's motions to compel are hereby ORDERED denied, and General Electric Company's motion to quash is hereby ORDERED granted.