**NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY, Plaintiff,**

v.

**NUCLEAR FUEL SERVICES, INC., Getty Oil Company, Commonwealth Edison Company, General Public Utilities Corporation, General Public Utilities Service Corporation, Jersey Central Power & Light Company and Wisconsin Electric Power Company, Defendants.**

**No. CIV–82–426E.**

United States District Court,
W.D. New York.

Aug. 11, 1986.

Philip Gitlen, Whiteman, Osterman & Hanna, Albany, N.Y., Thomas W. Evans, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, Robert Cantor, Mudge, Rose, Guthrie, Alexander & Ferdon, Washington, D.C., Howard Jack, Act. Gen. Counsel, Deborah A. Mann, Asst., Albany, N.Y., E. Dennis Muchnicki, Karen A. Kolmacic, Asst. Attys. Gen., Columbus, Ohio, for plaintiff.

Alan C. Brown/C. Kipps, Miller & Chevalier, Washington, D.C., Richard E. Moot, Moot & Sprague, F. James Kane, Damon & Morey, William Shapiro, Jaeckle, Fleischmann & Mugel, Buffalo, N.Y., Jack McKay, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Martin Siegel, Bishop, Liberman & Cook, New York City, Allen Beroza, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

The underlying facts in this action are set forth in *N.Y. St. Energy R. & D. Auth. v. Nuclear Fuel Serv.* ("*NYSERDA v. NFS*"), 561 F.Supp. 954 (W.D.N.Y.1983). Presently pending is a motion by defendant Nuclear Fuel Services, Inc. ("NFS") for a summary judgment declaring that it, rather than plaintiff New York State Energy Research And Development Authority ("NYSERDA"), is entitled to more than $500,000 in fees owed by certain utility companies [1] for the storage of spent nuclear fuel at the nuclear fuel and reprocessing center at West Valley, N.Y. ("the Center") from January 1, 1981 to February 25, 1982.[2]

In 1963 NYSERDA, which owns the Center in the name of the State of New York, entered into several agreements ("the West Valley Agreements") with NFS governing NFS's occupancy of the Center. The initial lease term was to end December 31, 1980. *See generally, NYSERDA v. NFS, supra* at 960. NFS thereafter commenced reprocessing spent nuclear fuel at the Center for entities including the utility defendants.

When in September 1976 NFS decided to withdraw from the reprocessing business, the utility defendants were invited to discuss the disposition of their fuel then stored at the Center. Thereafter, during 1977 and 1978, NFS entered into agreements with each of the utility defendants providing terms for continued storage and for eventual removal of the spent fuel. *NYSERDA v. NFS, supra* at 961. The agreements specified that storage charges were to be paid for as long as the spent fuel remained at the Center.

NYSERDA had announced a termination of the West Valley Agreements as of December 30, 1980 and such were to expire in any event the following day. NYSERDA however refused to accept surrender of the Center at that time asserting, that the facil-

---

1. Defendants Wisconsin Electric Power Company, Commonwealth Edison Company, and General Public Utilities Service Corporation and Jersey Central Power & Light Company (collectively, "the utility defendants").

2. A Memorandum and Order resolving the remaining issues in this case has been or will soon be filed.

ity's condition (due to the presence of the spent fuel) was not in compliance with the West Valley Agreements. *Id.* at 962. Litigation ensued which resulted in the execution February 18, 1982 by NYSERDA and NFS of a Settlement Agreement, Stipulation and Order ("the Settlement Agreement") purporting to resolve the issues then under litigation. That document is central to the present motion. In effect, NFS argues that the Settlement Agreement, taken in the context of the undisputed facts in this action, precludes any claim by NYSERDA to the disputed fees. NYSERDA does not dispute that NFS had the right to bill the utility defendants for storage during the period in question. *See* NYSERDA's Response to NFS Interrogatories #14. Rather it argues that, during negotiations in years prior to the Settlement Agreement, the parties had entered into a collateral oral contract by which NFS agreed to waive any claim it had to keep the storage charges.

Summary judgment under Fed.R.Civ.P. rule 56 is appropriate only where there is "no genuine issue as to any material fact."

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge * * *." *Jack Anderson v. Liberty Lobby, Inc.,* —— U.S ——, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

To the extent that it is necessary or even warranted to look beyond the face of the Settlement Agreement—either to establish its scope or to examine into the existence *vel non* and the meaning of any collateral contract—factual determinations will be required and summary judgment will be precluded. Thus the language of the Settlement Agreement is the key to the resolution of the present motion.

NFS first contends that evidence of the purported oral contract is barred by the parol evidence rule which precludes the admission of extrinsic evidence to alter or refute the terms of an integrated written contract where such are complete and unambiguous and where there has been no tenable allegation of fraud, accident or mistake. *See Meinrath v. Singer Co.,* 482 F.Supp. 457, 460 (S.D.N.Y.1979); *see also United States v. Wallace & Wallace Fuel Oil Co.,* 540 F.Supp. 419, 425 (S.D.N.Y. 1982).

The plaintiff does not challenge the Settlement Agreement but argues that the purported waiver by NFS was a collateral agreement—*i.e.,* separate, independent and complete although relating to the same subject matter. *Cf. Lee v. Joseph E. Seagram & Sons, Inc.,* 413 F.Supp. 693, 699 (S.D.N.Y.1976), *aff'd,* 552 F.2d 447 (2d Cir. 1977). Any such constitutes an exception to the bar of the parol evidence rule. Moreover, the appellate court in that case specifically stated:

"In * * * situations [more complex than real estate contracts], in which customary business practice may be more varied, an oral agreement can be treated as separate and independent of the written agreement even though the written contract contains a strong integration clause." 552 F.2d at 451–452.

The primary issue is whether the oral promise "would be an expectable term" of the subsequent written contract. *Id.* at 452.

This Court concludes in the circumstances of this case that any waiver by NFS of its storage fee expectancy would have been included in the Settlement Agreement (or, to put it another way, that the Settlement Agreement fully dealt with this issue). Section 14 of the Settlement Agreement provides

"This Agreement, including the attached exhibits and schedules that are expressly made a part of this Agreement, and the letter agreements executed contemporaneously herewith, embody all of the agreements and understandings among the parties. The parties expressly agree that drafts of this Agreement shall not be admissible for the purpose of construing or interpreting the provisions of this Agreement in any administrative or judicial proceeding."

Perhaps more significantly, section 15 which concludes the Settlement Agreement provides:

> "Upon the Settlement Date, this Agreement shall constitute a compromise and settlement of all of the parties' respective claims (without admitting or denying any of such claims) asserted in the above-entitled action or otherwise arising out of or relating to the West Valley Agreements or otherwise arising out of or relating to the Center or NFS' use or operation thereof."[3]

The supposed waiver by NFS of fee entitlement plainly falls within this broad but unambiguous language.[4] The parties throughout have been represented by competent counsel. While perhaps irrelevant, it is worth noting that the attorneys have been careful at every juncture to "nail down" all details of this litigation either in court or by written agreement. It stretches credulity to think they would not have spelled out very carefully the details of a waiver of interest in and to a substantial sum of money. Credulity, however, needn't enter into the matter. As noted, the face of the Settlement Agreement is clear; and further subsurface or extrinsic probing is unnecessary and not allowable.

Accordingly, NFS's motion for partial summary judgment is hereby ORDERED granted.

---

3. The NFS's rights to the storage charges are reserved by section 5 of the Settlement Agreement which provides in part:

   "(b) With respect to Spent Fuel that is not identified as NFS Material in Exhibit B of their Agreement:

   " * * * (3) Except as provided in this Section and Section 9, nothing in this Agreement shall diminish or otherwise affect any claims, rights, powers, or remedies [NYSERDA] or NFS may have against any person or entity relating to such Spent Fuel."

4. NYSERDA's implausible assertion is that the Settlement Agreement

   "is an integration of all the promises relating to NFS' *direct* obligation to [NYSERDA] but *not* an integration of all mutual agreements which exist between the two parties" (Plaintiff's Memorandum of Law at 13),

   which assertion is foreclosed by the terms of section 15.