**NEW YORK STATE ENERGY RE-SEARCH AND DEVELOPMENT AUTHORITY, Plaintiff,**

v.

**NUCLEAR FUEL SERVICES, INC., Getty Oil Company, Commonwealth Edison Company, General Public Utilities Corporation, General Public Utilities Service Corporation, Jersey Central Power & Light Company and Wisconsin Electric Power Company, Defendants.**

**GPU SERVICE CORPORATION and Jersey Central Power & Light Company, Cross–Plaintiffs,**

v.

**NUCLEAR FUEL SERVICES, INC., Cross–Defendant.**

No. Civ–82–426E.

United States District Court, W.D. New York.

June 13, 1989.

Martin S. Siegel, New York City, and Hodgson, Russ, Andrews, Wood & Goodyear, Buffalo, N.Y., for plaintiffs.

Alan Brown, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

This action was brought seven years ago by the New York State Energy Research and Development Authority ("NYSERDA") to establish and enforce its rights with respect to the storage of nuclear wastes by the various abovenamed defendants at a nuclear fuel disposal and reprocessing center located at West Valley, N.Y. ("the Center"). Defendant Nuclear Fuel Services, Inc. ("NFS"), the former tenant and operator of the Center, filed cross-claims against the utility defendants,[1] including the General Public Utilities Service Corporation and Jersey Central Power & Light Company (collectively "GPU"), to compel the removal of spent nuclear fuel, for non-payment of storage charges, and for indemnification. In turn, such other defendants cross-claimed against NFS. GPU asserted various allegations of fraud as well as breach of contract.[2]

This Court approved a settlement agreement between NYSERDA and the utility defendants July 6, 1987. That same day the entire action was ordered dismissed "without prejudice to the right, upon good cause shown within 60 days, to reopen the action if settlement is not consummated."

Order, dated July 6, 1987. NFS filed a motion September 3, 1987 to reopen its cross-claims for damages and storage charges against GPU and for other relief. NYSERDA, however, failed to move within the 60 days allotted, and its claims against NFS were accordingly dismissed with prejudice. Order dated February 10, 1988.

GPU also failed to move to reopen within such period. Thus, NFS has presently moved to dismiss with prejudice GPU's cross-claims against it for failure to prosecute. See Fed.R.Civ.P. rule 41(b). GPU has cross-moved for leave to file amended cross-claims. See Fed.R.Civ.P. rule 15(a). NFS has moved for summary judgment with respect to GPU's proposed Amended Cross–Claims, should leave for the filing of such be granted. It has also moved for summary judgment with respect to Count III of its Second Amended Cross–Claim against GPU for recovery of damages and interest with respect to unpaid storages charges. See Fed.R.Civ.P. rule 56. All of these motions will be considered herein.

Whether conduct, or lack thereof, constitutes a failure to prosecute depends upon the context of such in the circumstances of the particular case. See Link v. Wabash Railroad Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). The determination rests within a district court's sound discretion over the efficient administration of its affairs. Id., at 633, 82 S.Ct. at 1390; Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir.1982).

Here, NFS places reliance on the fact that GPU did not move to reopen within the 60–day period. In this Court's view, GPU's failure to file such a motion is a highly significant circumstance which far overshadows any other circumstances referenced by the parties in their motion papers as tending either to suggest or to dispel dilatoriness. GPU's failure to move to reopen places NFS's instant motion upon footing different than ordinarily would obtain on a

---

1. The term utility defendants refers to all the defendants except NFS and its parent, Getty Oil Co. ("Getty").

2. For additional background, this Court's prior decisions pertaining to the action should be consulted. See 561 F.Supp. 954; 97 F.R.D. 709; 640 F.Supp. 1555; 640 F.Supp. 1558.

rule 41 dismissal motion. GPU's cross-claims are not presently live. They have *already been dismissed*—without prejudice to be sure, but only without prejudice to the taking of specified action the time for the taking of which has passed.[3] Thus this Court is not concerned with whether NFS has shown it would be prejudiced from delay if GPU were allowed to reinstate (and then to amend) its cross-claims. The inquiry more appropriately involves whether GPU has demonstrated (1) a valid reason for its failure to act within the specifically-allotted period to preserve its claims and (2) "good cause" (within the contemplation of the July 6, 1987 Order requiring such) why its claims should be preserved. *See* Fed.R. Civ.P. rule 60(b) (mistake, inadvertence or excusable neglect as grounds for affording relief from a dispositive order).[4]

■ GPU's counsel, Martin S. Siegel, Esq., stated at oral argument on these motions that he had not received a copy of this Court's July 6th sixty-day dismissal order. He conceded, however, that GPU's local counsel had received a copy of such in a timely fashion. *See also* Reply Affidavit of Martin S. Siegel, Esq. (sworn to November 9, 1988), ¶ 5. GPU's excuse, then, for not having moved to reopen in a timely fashion appears to be the implied neglect of their local counsel in not notifying Mr. Siegel of the deadline for preserving the cross-claims.[5] But a "client is not excused from the consequences of his attorney's nonfeasance." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir.1980). The client must be, consistent with our system of representative litigation, charged with notice of all facts within the possession of his attorney. *Id.*, at 667; *see Link v. Wabash Railroad Co., supra*, 370 U.S. at 633–634, 82 S.Ct. at 1390. It follows that "principal counsel" is chargeable with the knowledge of local counsel, because the latter especially is the agent of the former.

■ This Court does not reference the above rule without a cognizance of its harshness. However, there does not appear to be any persuasive reason for mitigating its effect in this case. The July 6th Order was hardly the first issued by this Court in this lengthy litigation; if there had been difficulties in transmitting information between GPU's local and principal counsel, there was ample time for such to have been ironed out. Moreover, Mr. Siegel was clearly aware of the July 6th Order by October 2, 1987, when he referred thereto in a submission to this Court. *See* Response of GPU to Motion of NFS Regarding the July 6, 1987 Order of Dismissal ("Response of GPU"), dated October 2, 1987. The sixty-day period had then elapsed by no more than a month, and yet Mr. Siegel did not seek relief then from what had become via the lapse of time the inherently prejudical effect of the July 6th Order; he did not even make mention of his not having timely received a copy of the Order or express any inclination to prosecute his claims affirmatively. Rather he merely asserted that GPU "do not consent to dismiss all of their cross-claims against NFS." *Ibid.* Mr. Siegel appears to have been suffering from a misapprehension regarding the status of the case. As noted—and whether consensually or not—GPU's cross-claims had by then already been dismissed. Therefore, they were in need of relatively immediate resuscitation. *See* Fed.R.Civ.P. rule 60(b) (motion for relief from judgment must be made within a reasonable time, and under no circumstances after the lapse of more than a year following its entry). But Mr. Siegel took no affirmative steps for over ten months until filing a motion to amend these cross-claims August 15, 1988. The making of a motion

---

3. Notwithstanding the perspective of GPU, such posture is not a mere "technicality." *See* Reply Affidavit of Martin S. Siegel, Esq. (sworn to November 9, 1988), ¶ 3.

4. The determination of a request for relief from a dispositive order is also vested in the discretion of the district court. *E.g., Audiovisual Publishers, Inc. v. Cenco, Inc.*, 580 F.2d 50, 52 (2d Cir.1978); *Sampson v. Radio Corp. of Am.*, 434 F.2d 315, 317 (2d Cir.1970).

5. GPU's local counsel, the Buffalo firm of Hodgson, Russ, Andrews, Woods & Goodyear, have not in any manner enlightened this Court as to what may have transpired between them and Mr. Siegel regarding the receipt of the July 6th Order.

for relief had by then been unreasonably delayed.

Accordingly, inasmuch as the dismissal of GPU's cross-claims has already acquired prejudicial effect, which there is no legitimate reason to upset, NFS's motion to dismiss such cross-claims with prejudice is moot. GPU's motion to amend its cross-claims and NFS's motion for summary judgment thereon are also moot and will be denied.

The only remaining issue concerns NFS's motion for summary judgment with respect to Count III of its Second Amended Cross–Claims against GPU.[6] NFS is seeking damages in the amount of $168,000 plus interest for unpaid storage charges for the period January 1, 1981 to February 25, 1982.[7] NFS purportedly issued an invoice to GPU for such amount April 29, 1983 with payment due May 29, 1983. GPU has allegedly breached the 1978 Storage Agreement by not making payment thereon.

■ GPU contends in defense that the parties entered into an "oral arrangement" January 26, 1982 modifying the 1978 Storage Agreement. Thereby, GPU asserts, NFS agreed to waive its claim for storage fees for the period in question. *See* Affidavit of Walter G. Runte (sworn to November 9, 1988), ¶¶ 71–76. NFS has conceded the

existence of the oral modification for purposes of its motion but says that such is inoperative as a matter of law for lack of consideration and for violation of the statute of frauds. *See* Reply of NFS to Opposition of GPU to NFS's Motion for Summary Judgment ("Reply of NFS") at p. 13 & fn. 7.

Section 5–1103 of New York's General Obligations Law provides:

> "An agreement, promise or undertaking to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration, provided that the agreement, promise or undertaking changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest, shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent."

Thus, the oral modification, to have been valid, needed the support of consideration. The parties are in disagreement whether there was such. *Compare* Reply of NFS, *supra*, at pp. 13–14 *with* Supplemental

---

**6.** NFS, alone among the parties, filed a timely motion to reopen within the aforementioned sixty-day period. It pointed out therein that the Settlement Agreement pursuant to which the July 6th Order was issued had left certain claims unresolved, including the cross-claims between NFS and GPU. NFS proposed the "mutual dismissal by consent and with prejudice" of these cross-claims, but, alternatively and if GPU were to reject such proposal, NFS requested a briefing schedule on summary judgment motions it would bring in support of its cross-claim for storage charges against GPU. *See* Motion of Nuclear Fuel Services, Inc. Regarding The July 6, 1987 Order of Dismissal, filed September 3, 1987. GPU rejected NFS's proposal. *See* Response of GPU, *supra*. Accordingly, NFS's motion in the alternative to reopen certain of these claims was invoked. Such motion was, in this Court's view, amply supported by good cause. The Settlement Agreement between NYSERDA, and the utility defendants did not resolve the cross-claims amongst the defendants, and those claims which were not rendered moot by the Settlement Agreement rightfully should upon this timely motion be permitted to survive.

**7.** The cross-claim for unpaid storage charges was first made as part of NFS's Second Amended Cross-claims. A "proposed" copy of such was filed July 20, 1983. A stipulated consent to the filing of Second Amended Cross-claims "which have been filed to date" was endorsed by the Court, and such stipulation was filed September 12, 1983. No Second Amended Cross-claims were filed thereafter.

By letter to the Court dated November 9, 1988, NFS's counsel, Alan C. Brown, Esq., requested that the Second Amended Cross-claims be "officially filed." GPU has objected to such late filing on the basis of the 1983 stipulation. *See* Affidavit of Martin S. Siegel, Esq., dated November 9, 1988.

Consistent with the customary practice of this Court, the filing of the proposed pleading sufficed as the filing of the pleading itself upon the stipulation having taken effect and removed its proposed status. Thus the Second Amended Cross-claims are construed to have been timely filed in 1983. The proposed copy of such alerted GPU to its content, and the terms of the stipulation plainly indicate that it was such proposal which was stipulated to.

Memorandum of GPU In Opposition to NFS's Motion for Summary Judgment, at pp. 5–6; *see* Runte affidavit, *supra,* ¶ 75 (attesting to assurances obtained from GPU). Hence a genuine issue of fact remains respecting whether the oral modification involved consideration, precluding summary judgment unless the oral modification was necessarily invalid for some other reason.

■ The oral modification, to have been valid, also needed to be consistent with the applicable statute of frauds—*viz.*, section 5–701 of New York's General Obligations Law. That statute provides, in pertinent part:

> "a. Every agreement promise of undertaking is void, unless * * * in writing * * * if such agreement, promise or undertaking:
>
> "1. By its terms is not to be performed within one year from the making thereof * * *."

NFS says the 1978 Storage Agreement, by its terms, could not have been performed within a year and that therefore, under section 5–701, the oral modification was invalid. In fact, however, the relevant provisions of the 1978 Storage Agreement are for an indefinite duration; both NFS and GPU enjoyed discretionary options to terminate and thus could have terminated the Agreement within a year. *See* Runte affidavit, *supra,* Exhibit C (1978 Storage Agreement ¶¶ 2.(a)(i) and 2.(a)(ii)). The 1978 Storage Agreement did not need to be in writing for purposes of the statute of frauds and it follows that neither did its subsequent modification.[8] *See Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 196, 443 N.E.2d 441, 444 (1982) (contracts theoretically performable within a year, even if unlikely to be so performed, not subject to statute of frauds). Because the purported oral modification relied upon by GPU (and admitted *arguendo* by NFS) is therefore not inoperative as a matter of law pursuant to either

section 5–701(a)(1) or 5–1103 of New York's General Obligations Law, NFS is not entitled to summary judgment on its crossclaim for storage charges.

Accordingly, it is hereby ORDERED that the motions (1) of Nuclear Fuel Services, Inc. to dismiss with prejudice the crossclaims against it by General Public Utilities Service Corporation and by Jersey Central Power & Light Company, (2) of General Public Utilities Service Corporation and Jersey Central Power & Light Company to amend their cross-claims and (3) of Nuclear Fuel Services, Inc. for summary judgment are all denied.[9]

---

**8.** NFS has not relied on the parole evidence rule. Such rule prohibits the evidencing of only prior or contemporaneous oral modifications under certain circumstances.

**9.** The respective cross-motions for sanctions pursuant to Fed.R.Civ.P. rule 11 are frivolous and are also denied.